RIO GRANDE, E. P. & S. F. R. CO. v. DUPREE et al.
No. 1595—5974.

Commission of Appeals of Texas, Section A. Dec. 22, 1932.

Terry, Cavin & Mills, of Galveston, and Turney, Burges, Culwell & Pollard and A. H. Culwell, all of El Paso, for plaintiff in error.

Robert L. Holliday, and Henry T. Moore, both of El Paso, for defendants in error.

CRITZ, J.

This is a suit for damages. It originated in the district court of El Paso county, Tex. Mrs. Dora Dupree, for herself and as next friend for her two minor sons, Joseph and David Dupree, complained against Rio Grande, El Paso & Santa Fe Railroad Company on account of the death of Dr. W. A. Dupree, her deceased husband, who was the father of John and Joseph Dupree. Dr. Dupree's death resulted from a collision between a truck in which he was riding, and a locomotive of the railroad at a public crossing. The case was submitted to a jury in the district court on a general charge and resulted in a verdict for the plaintiffs for $50,000. The district court required a remittitur of $14,000 and judgment was finally entered against the railroad for $36,000 duly apportioned among the three plaintiffs. On appeal by the railroad this judgment was affirmed by the Court of Civil Appeals at El Paso. 35 S.W.(2d) 809. The railroad brings error.

We shall hereafter refer to the Duprees as plaintiffs, and to the railroad company as the railroad.

The plaintiffs' petition alleges certain acts of negligence on the part of the railroad resulting directly and proximately in Dr. Dupree's death. It is not necessary to detail such allegations here; it is sufficient to say that the verdict of the jury is amply sustained as to these matters by probative evidence in the record. In fact, the railroad does not question this conclusion.

The railroad company contends that the judgments of the Court of Civil Appeals and

district court should be reversed for two reasons:

(a) Because the evidence shows as a matter of law that Dr. Dupree was himself guilty of negligence which directly and proximately contributed to his death.

(b) Because of certain alleged improper argument indulged in by plaintiffs' counsel while making his closing argument to the jury.

We shall consider the two contentions in the order in which they are stated.

In connection with the issue of contributory negligence, it is contended by the railroad that the locomotive which collided with the truck in which Dr. Dupree was riding at the time he was killed was pulling a train engaged in transporting interstate commerce, and therefore the rules and standards of negligence as laid down and announced by the United States Supreme Court must be applied in deciding the issues of negligence in the instant case.

■ It is settled that the Federal Employers' Liability Act (45 USCA §§ 51–59), with its amendments, and other federal laws applicable to railroad carriers supersede, in so far as they cover the same field, all state laws where the railroads and their employees are engaged in interstate commerce. Also in such cases the rules and standards of negligence as laid down and announced by the United States Supreme Court must be applied; and this even where such cases are adjudicated in state courts. On the other hand, it is equally as well settled that the Congress has not undertaken to enact any law governing the tort liability of railroads to third persons not in their employment, and where such cases are being adjudicated in state courts they are at liberty to apply their own rules and standards of negligence. Galveston, H. & S. A. Ry. Co. v. Wells (Tex. Sup.) 50 S.W.(2d) 247, and authorities there cited. The opinion in the Wells Case, supra, clearly states the reasons for the above holding, and exhaustively reviews the authorities on which it is based. No good purpose can be served by further discussion here.

■ It is undisputed that no relation of master and servant existed between Dr. Dupree and the railroad. It follows that we must determine the question as to whether Dr. Dupree was guilty of negligence contributing to his death according to the rules and standards laid down and announced by our own Supreme Court. At this point we deem it proper to say that at the time this writ was granted the Wells opinion, supra, had not been delivered, and our Supreme Court had not then directly decided the question above discussed.

We shall now proceed to determine the issue as to whether the undisputed evidence in this record shows as a matter of law that Dr. Dupree was himself guilty of negligence which directly and proximately caused, or contributed to cause, his death. The Court of Civil Appeals has made a very extended and comprehensive statement of the testimony of the various witnesses who testified touching the facts and circumstances of this deplorable accident, and, in the interest of brevity, we will not repeat such testimony here, but content ourselves with referring to and adopting that part of that opinion.

■ As we understand the testimony, it shows that Dr. Dupree and his son, John Dupree, were riding in the truck at the time of the accident; that it was not shown which one of them was doing the driving; that Dr. Dupree was killed instantly at the time of the collision, and John Dupree lived only a few minutes thereafter; and that at the time of the accident the crossing in question was unusually dangerous in that it was uphill, very rough and narrow, and had deep ditches on either side, thus requiring the driver of a motor vehicle to give close attention thereto in order to pass over it in safety. It was further shown that, at the time the accident occurred, the approaching train was, to some extent, obscured by salt cedar trees and other bushes, and a double line of telephone or telegraph poles. Also at the time a violent sand storm was raging, making it difficult for a person to see more than a few feet ahead. It was shown that the train was running at a high rate of speed under the circumstances at the time; that the whistle was not blown at the whistling post or at any other point where it would have constituted a warning; and that the bell was not rung as required by law. Also it was shown that such train was supposed to pass this crossing between 3:30 and 4 o'clock while on this occasion it passed about 1:30. All of the above facts are supported by the evidence, and are presumed to be true in support of the verdict of the jury.

■ On the other hand, the testimony shows that, at the place where the collision occurred, the track is straight for quite a distance; that a paved highway runs parallel with the track, and adjacent to the railroad right of way; that Dr. Dupree's home was a short distance from the highway and across the railroad; that he and his son, who was also killed, were both thoroughly familiar with the crossing; that the truck came first along the paved highway going in an opposite direction to that which the train in question was traveling; that, when the crossing was reached, the truck turned to the left and proceeded about 45 feet without stopping, to the track in the direction of the Dupree home; that the truck was traveling at the rate of about 10 miles per hour on the highway as it approached the crossing; that, when the truck reached the railroad track, the left front fender and wheel struck the locomotive at a point thereon back of the cylinder head, and about 10 feet from the pilot; that just before the impact the man who was sitting on

the right in the truck grabbed the steering wheel; and that Dr. Dupree and his son were the only persons in the truck at the time.

From the above facts the railroad company contends that Dr. Dupree was, as a matter of law, guilty of negligence which directly and proximately contributed to his death. In connection with this contention the railroad further contends that the above facts show as a matter of law that Dr. Dupree approached the crossing in question without observing any of the natural laws of self-preservation and ran the truck in which he was riding heedlessly and recklessly into the side of the locomotive.

The effect of the jury's verdict is to find the railroad guilty of negligence which resulted in Dr. Dupree's death, and to acquit Dr. Dupree of contributory negligence. There is no contention made that the finding in the first instance is not supported by the evidence, and we think the finding in the second instance also so supported.

The railroad further contends that the uncontroverted evidence above detailed shows, as a matter of law, that Dr. Dupree approached and went upon the crossing in question and thereby propelled his truck against the railroad's locomotive without looking or listening for the approaching train, and that this was negligence per se. We think the facts do not conclusively establish even this contention. As above shown it was proven that the train was run at a high and dangerous rate of speed, and that no warnings of any kind were given as required by our statute. Article 6371, R. C. S. 1925. The jury was justified in concluding that the operation of the train at the speed it was run at the place, and under the circumstances at the time, was negligence on the part of the railroad. The failure to ring the bell and sound the whistle was negligence as a matter of law. Under the facts the jury were justified in concluding that such acts of negligence produced or occasioned the collision, and in concluding further that it would not have occurred absent such acts. Furthermore, the jury, under such facts, were not bound to find that Dr. Dupree did not look or listen for the train. Finally it is not negligence, as a matter of law, for a person about to cross a railroad at a public crossing not to stop, look, and listen. Trochta v. Ry. Co. (Tex. Com. App.) 218 S. W. 1038; Galveston, H. & S. A. Ry. Co. v. Wells, supra.

The general rule of negligence in this state is not different, as applied to railroad crossings, from other cases of negligence. The right of the traveler to use the highway at its point of intersection with the railroad is not unrestricted. It is his duty to exercise ordinary care and prudence to discover and avoid approaching trains. Likewise the right of the railroad to use its own track where it crosses a public highway is not unrestricted. It is its duty to exercise ordinary care and prudence to avoid injuring a traveler on the highway. Of course it is the duty of the railroad to give the statutory signals, and failure to do so is negligence per se. Article 6371, supra.

In applying the rule of ordinary care to negligence cases no set or absolute standard of action can be laid down. Usually the issue is one of fact to be determined from all of the facts and circumstances of the particular case. Of course, in a case where the evidence is uncontroverted the issue ceases to be a question of fact, and becomes one of law.

From the facts above recited we cannot say that the conclusion could not reasonably have been reached by the jury that the driver of the car, exercising ordinary care, had approached near the moving train, before perceiving same, coming at excessive speed, at an unusual time, and without warning, and, further, that immediately upon perceiving same the occupant of the car who was not driving, acting under the influence of overwhelming terror, which was the proximate result of the negligence of the railroad company, seized the steering wheel and prevented the driver from avoiding the accident as he might otherwise have succeeded in doing. International & G. N. Ry. Co. v. Neff, 87 Tex. 309, 28 S. W. 283. Under such circumstances, the inference would certainly be warranted that the occupants of the car were in the exercise of ordinary care, repelling the finding of contributory negligence on their part as a matter of law.

The railroad contends that, under the rule laid down by the Supreme Court in Sabine & E. T. Ry. Co. v. Dean, 76 Tex. 73, 13 S. W. 45, 46, and by the Commission in Gulf, C. & S. F. Ry. Co. v. Gaddis (Tex. Com. App.) 208 S. W. 895, 896, Dr. Dupree was guilty of negligence as a matter of law.

In the Dean Case, supra, the Supreme Court said: "This evidence is not contradicted. But one conclusion can be drawn from it; and that is that, when there was nothing to prevent his seeing his danger, he heedlessly stepped upon the track at the very moment of the collision."

We think the rule announced in the Dean Case, supra, is still the law of this state, but the evidence in the case at bar does not show, as a matter of law, that Dr. Dupree heedlessly drove upon the track when there was nothing to prevent his seeing his danger. The facts we have detailed demonstrates that the jury was justified in finding to the contrary.

In the Gaddis Case, section B of the commission held: "All men in possession of their faculties are charged with knowledge that a railroad track is a dangerous place, and the

law will not permit them to go upon the track, even at a public highway, without being charged with a recognition of the danger attending such action and the use of such care as ordinary prudence would dictate in so doing. Where no care whatever has been exercised, our courts uniformly hold that contributory negligence exists as a matter of law, and recovery is denied."

We think the holding above is also still the law of this state, but the facts of this case do not show, as a matter of law, that Dr. Dupree failed to exercise any care whatever in going on the track as he did, even if we admit that he was driving the truck in person. It is established that the railroad company was guilty of negligence which proximately caused Dr. Dupree's death. For aught we know the doctor may have looked and listened for the train and hearing no signals drove on the track believing himself safe in doing so. Whether his act was negligence under the circumstances here was a question of fact for the jury.

To say that Dr. Dupree was guilty of negligence as a matter of law in driving, if he did the driving, on the crossing in question here, under the facts and circumstances of this case, as presumed from the evidence and the verdict, would be to say to the traveling public that, regardless of any duty imposed by law upon the railroad company, all persons who cross railroads at public crossings do so at their own risk and peril, and are charged by law with the absolute duty of discovering and avoiding approaching trains. We think no court has gone so far as to announce such a rule. Certainly the courts of this state have not done so.

We now come to consider the assignment involving the alleged improper argument of the plaintiffs' counsel. The bill of exception clearly states the issue. It is as follows:

"While the Hon. Robert L. Holliday was making the closing argument to the jury in said cause, he stated in said argument to the jury practically as follows:

"'Gentlemen of the Jury, the failure of this crew to blow the whistle and ring the bell has taken a life. Mrs. Dupree has lost her husband and her sons a father. It might have been you. It might have been me. Some of you gentlemen have sons. It might just as well have been your son. Remember that when you render your verdict, to do unto others as you would have them do unto you.'

"To which argument when so made defendants' counsel objected and excepted for the reason that said argument was an appeal to passion and prejudice, had no evidence to sustain it; that the measure of recovery as therein asked by plaintiff's counsel was not a proper measure of recovery, but rather an appeal to sympathy; that same was inflam-

matory and highly prejudicial to the defendants, whereupon the court stated to the jury:

"'Gentlemen, I withdraw from your consideration that part of the argument of counsel in which he said "consider if you had boys and judge as you would be judged." That is not the measure you judge by, but follow the charge as written.'

"Whereupon Mr. Holliday stated:

"'I add my request if the Court considers the argument improper, and apologize to the jury.'"

In regard to the above argument the Court of Civil Appeals holds (35 S.W.(2d) 809, 814): "The remarks of counsel perhaps exceeded the bounds of strict propriety, but we do not regard the same as reversible in view of the court's instruction to the jury at the time and Mr. Holliday's request."

In passing on the issue as to whether this argument presents reversible error, we wish to here state that we adhere to the rule that, if the argument is improper, it must work a reversal unless we are able to say that the question of injury is free from doubt in the mind of the Supreme Court itself. Robbins v. Wynne (Tex. Com. App.) 44 S.W. (2d) 946.

The railroad contends that the above argument constitutes reversible error for the following reasons: (a) Because it is inflammatory, and constituted an appeal to prejudice, passion, and sympathy; (b) because there is no evidence in the record to support it; and (c) because the measure of recovery as therein asked was not a proper measure.

As to the first objection, (a) above, we think the argument is not of such a character as would be calculated to cause the jury to forget their oaths and duties, and return a verdict regardless of the facts and the law. Under our system lawyers are allowed some latitude to engage in oratory. Of course they must stay within the record, and must not attempt to appeal to prejudice, passion, or sympathy. On the other hand, an attorney has a right to use such legitimate argument as will impress the jury with the seriousness and importance of the case. We think that, when considered in the light of the entire record, the argument complained of is not subject to the objection that it constitutes an improper appeal to prejudice, passion, or sympathy.

As to the second objection, (b) above, we think the argument is supported by the testimony. It is fairly evident that the plaintiffs' attorney was justified in telling the jury that the failure to ring the bell and blow the whistle had caused Mrs. Dupree to lose her husband, and her two sons to lose their father.

As to the third objection, (c) above, we think the argument, "do unto others as

you would have them to do unto you," merely amounted to a short hand appeal to the jury to apply what Christian people commonly denominate the "Golden Rule" as given by the Saviour in the sermon on the Mount, "Therefore all things whatsoever ye would that men should do to you, do ye even so to them." Matthew 7:12. The application of the Golden Rule by this jury would require them to look with equal solicitude to the rights of the defendant and the plaintiffs, and would not call for the application of an improper measure of damages.

We recommend that the judgment of the Court of Civil Appeals, which affirms the judgment of the district court, be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.