## HENWOOD v. GILLIAM.

### No. 13844.

Court of Civil Appeals of Texas. Dallas.

Nov. 7, 1947.

Rehearing Denied Dec. 5, 1947.

Adair Dyer, of Dallas, and Allen Clark, of Greenville, for appellant.

G. C. Harris, of Greenville, for appellee.

BOND, Chief Justice.

This cause was recently assigned to the writer for the preparation of an opinion expressing the conclusions of this Court. The action is one for damages resulting from a collision of appellee's automobile with appellant's train of cars standing across a public highway within the corporate limits of Wolfe City, Texas, without guards, flagman or watchman, lights or flares, or any mechanical device for warning of the obstruction of the crossing. On trial to a jury, on special issues, the jury found that the conditions surrounding the crossing were such as a reasonably prudent person, exercising ordinary care, could not at nighttime use with safety; that the conditions were known to the defendant, his agents, servants and employees at the time of the said collision, or by the exercise of ordinary care, could or should have been known by them; that the obstruction, under the existing circumstances, was a proximate cause of the collision and damages sustained by plaintiff; that the failure of the defendant to have installed and in operation at the crossing a mechanical device for warning plaintiff and others using the highway of the obstruction, was negligence under the circumstances then existing and a proximate cause of the collision and plaintiff's

damages; and that defendant's failure to keep a proper lookout (the term "proper lookout" is defined in the court's charge as a "lookout that would be kept by a person of ordinary prudence under the same or similar circumstances"), was negligence and a proximate cause of the collision and damage. The jury further found that on the occasion in question the plaintiff, approaching the railroad crossing, did not fail to keep a "proper lookout" for his own safety for a train standing across the highway; that the plaintiff was not guilty of negligence to listen for a train on approaching the crossing, or to have his automobile under control so that he could have stopped same within the range of his vision, or operated his automobile under all the circumstances existing at the time of the collision at an unreasonable, excessive, or dangerous rate of speed, or failed to retard or slow down the speed of his automobile under all the circumstances existing at said time; and that the collision in question was not the result of an unavoidable accident. The jury assessed the damages.

This appeal is predicted upon a single point of error, in that, the trial court erred "in refusing to grant appellant's motion for a peremptory instruction for the reason that under the undisputed facts and as shown by said motion, appellee was guilty of contributory negligence as a matter of law."

■■■ Appellant's motion for peremptory instruction assigns numerous grounds in support of the motion, but, in brief here presented, appellant limits his complaint to the failure of the court to grant the motion on the ground of contributory negligence of appellee as a matter of law. So, in all other respects we must assume the verdict of the jury finds support in evidence to sustain the judgment of the trial court; and, where the trial court has submitted to the jury issues of contributory negligence, and the jury has acquitted the appellee on such issues, then the question arises on appeal as to whether or not, after weighing all the evidence most favorable towards appellee, disregarding all evidence to the contrary, it can be said that plaintiff's conduct was negligent as a matter of law irrespective of the negligence of the appellant; that is,

whether the appellee exercised ordinary care under all the circumstances, whether he acted as an ordinarily prudent person would have acted.

■■■ What is ordinary care under a given ground of facts must be determined by the jury as to what, in their judgment, a man of ordinary prudence would have done for his own safety under the attendant circumstances. The jury, in all such cases, are the triers of the facts and the trial judge, if there is any substantial evidence supporting the finding, must follow the verdict of the jury in rendering judgment. In which case, this Court is without the power to disturb the judgment.

Briefly, the evidence shows the railroad crossing to be in a depression or flat, and is approached by travelers on the public highway from the north and south at a downgrade. On the south upgrade the City of Wolfe City had four or more street lights which, at night, throw rays of light discernible by travelers approaching the crossing from the north and about on level with the top of a box car. The defendant's train of cars, in which was a flatcar three or four feet high from the rails or ground, was across the highway, the presence of the flatcar obstructing the road. There were no lights, flares, watchman or mechanical device at the crossing to warn the traveling public of the presence of the obstruction. At about 10 o'clock on the night of April 17, 1946, the plaintiff, in company with a young lady sitting in the front seat of his automobile with him and another couple on the back seat, approached the crossing from the north, the automobile moving at about 25 to 30 miles per hour, and, without slackening his speed, the plaintiff ran head-on into and under the flatcar, resulting in the injury to himself and damage to his automobile.

The plaintiff testified that he had been living in Wolfe City for approximately thirteen years, since he was eight years of age, he was then twenty-one years of age; that he was familiar with the railroad crossing and knew the conditions that existed there. He said: "I had been across it, knew it was down in a flat, and knew there

were lights in Wolfe City, and knew all about it"; that, in approaching the crossing, traveling from the north, it is downhill, and same is true coming to the crossing from the south; the crossing is in the flat between the hills. That about 10 o'clock on the night of April 17, 1946, he and the three others were returning to Wolfe City from Ladonia, Texas, traveling in his automobile at a rate of speed from 25 to 30 miles per hour, not over 30 miles per hour; that he approached the railroad crossing, saw the street lights in front of him; they were up high, which made the crossing difficult to observe, and, as he approached the crossing and just before the collision, he recognized the flatcar was across the track, and, before he could apply his brakes, ran head-on into the train of cars; that there was no signal-man or watchman or anyone else there to give warning, and no lights or flares or any kind of mechanical apparatus to warn one approaching from the north. In answer to questions on cross-examination, the plaintiff further testified that he did not know whether he could have seen the train standing across the track if he had been looking for the train; he did not see it as he was approaching the crossing. "You have to get right up on it before you see it * * * It is downgrade there.

"Q. I know its downgrade, but you haven't answered my question. How far could you have seen it? A. I don't know.

"Q. Thirty feet? A. I don't believe I could have seen it in that length of time.

"Q. Twenty-five feet? A. I don't know how far.

"Q. Well, will you say you couldn't have seen it at twenty-five feet? A. No sir. * * *

"Q. In how far could you have stopped, if you had seen the train, do you suppose? A. At my speed, the width that my lights were showing. * * *

"Q. In what distance could you stop, then? A. I don't know what the distance was * * *.

"Q. Do you think you could have seen that train if you had been looking that night? A. I was looking."

In the main, plaintiff's testimony is substantiated by that of numerous other witnesses: A Mr. King testified that he was familiar with the crossing and the highway; saw plaintiff's automobile approaching the crossing at a rate of about 15 or 20 miles per hour; that he had traveled the highway "right smart" at nights, observed, from the north, the street lights of the City with reference to the crossing, that they showed above the crossing. That he saw the collision of the automobile with an empty flatcar standing across the highway. In answer to questions on cross-examination, this witness said that "There wasn't no moon shining; it was not a bright moonshiny night; the moon was not up and it was not clear; it was a dark night, not raining." A Mr. Smith testified that on the occasion of the collision he was in plaintiff's automobile when it collided with the flatcar across the road; he and his wife (since married) were on the back seat. He said that he was familiar with the conditions and surroundings of the crossing in question, coming north; the crossing is below, down at the bottom of the hill; that as they were approaching the crossing, the lights and brakes on the plaintiff's automobile were good. A Mr. Taylor testified that the road immediately north of the crossing is upgrade, "quite a grade if you are going north"; and, likewise, there is such an upgrade going south; that he was familiar with the crossing, had approached it at night in an automobile and knew its nighttime condition. It is a low place, and when one comes up on it from the north, you get the lights from the town on the other hill south; the lights are "just exactly right to blind you and, a flatcar being low, it is hard to see it until you are close upon it * * *. I would say thirty-five or forty feet; until your lights rise enough that it comes in the focus of your lights." A Mr. Tidwell testified to facts substantially as related above by Mr. Taylor, as did, also, a Mr. Brigham and numerous other witnesses.

This photograph, offered in evidence by the defendant, depicts the conditions and surroundings about the crossing in question substantially as they appeared on the night of the collision:

■ We are of the opinion that there was no evidence to show that plaintiff knew or should have known in the exercise of ordinary care the unusual, dangerous or hazardous conditions surrounding the crossing at nighttime. His testimony that he was familiar with the railroad crossing, knew the conditions that existed there, that he had crossed it, knew it was down in a flat, knew there were lights in Wolfe City and "knew all about it," does not as a matter of law convict him of contributory negligence for failure to apply his brakes and stop his car before colliding with the obstruction across the public highway, the obstruction not discernible to him due to the allurement of the street lights on the upgrade of the road beyond the obstruction. The appellant knew the dangerous conditions surrounding the crossing, as found by the jury; thus could, or should have anticipated that some traveler would come along over the highway and feel absolutely secure that the road would be free of any obstruction; and the fact that plaintiff was allured to a sense of security by the street lights seen beyond, above and across the top of the flatcar, and failed to observe the presence of the flatcar upon the crossing until too late to stop, presents, we think, a question for the jury's determination as to whether plaintiff was guilty of contributory negligence for his failure, in the exercise of due care for his own safety and for that of his companions, to stop in time to avoid the collision. What is due care under a given group of facts must be determined by the triers of the facts as to what, in their judgment, a man of ordinary prudence would have done under the attendant circumstances. It is reasonable that a sane man will not knowingly and recklessly steer his automobile into a train standing across a highway, when there is nothing obstructing his view, or attracting his attention, or interfering with the operation of his automobile. The presumption that plaintiff exercised ordinary care for his own protection and that of his companions, and did not voluntarily place himself in the position of peril, is proper to be considered by the jury as a circumstance weighing in favor of the contention of plaintiff that he was not guilty of contributory negligence, and such may have been so considered by the jury.

■ The exercise of ordinary care, as disclosed in this record, was the measure of duty imposed upon the plaintiff. Conceding that the physical conditions were known to plaintiff, and that he might have discovered the presence of the train obstructing the highway in time to have avoided the collision, had he thought of the presence of danger, there remained for the jury the question whether or not under all the facts and circumstances a reasonably prudent person would or should not have done as he did. Appellant's contention that appellee was guilty of contributory negligence as a matter of law, under all the attendant facts and circumstances, is not well taken. In cases of this nature, conclusion must be reached on the peculiar attendant facts and circumstances of each case. Adjudicated cases are of little value in determining the issue, for seldom do we have the exact controlling factual background. The authorities cited in briefs for appellant and appellee have but slight controlling application to the case at bar. The case of Missouri, K. & T. Ry. Co. of Texas v. Long (Tex.Com. App., approved by the Supreme Court), 299 S.W. 854, 856, brings facts near to those here, in which the Court said: "We do not believe that lack of knowledge is always a defense to an action of this kind, but, in view of the fact that it is alleged and contended that the lights of the city of Temple, at a considerable distance, but close enough to this crossing to be seen by the users of the highway, traveling west, constantly burn at night, and are faced by such travelers, etc., and this is one of the circumstances that it is alleged rendered the crossing more than ordinarily dangerous at night, and in view of the further fact that the railway company would not, as a matter of law, be presumed to have known this peculiar or unusual condition as to such lights, we think that the railway company would not be held responsible on account of any unusual danger produced at said crossing by such lights, unless the company knew of such conditions, or by the exercise of ordinary care should have so known. This is an issue to be determined by the jury from the facts,.

either direct or circumstantial. Plaintiff in error urgently insists that there is no evidence in the record to sustain the verdict of the jury. We have carefully examined the statement of facts and the opinion of the Court of Civil Appeals, and, while the evidence in favor of the verdict is very meager, still we are not prepared to hold, as a matter of law, that there is no evidence in the record that will sustain the verdict."

The judgment of the court below is affirmed.

### On Rehearing.

LOONEY, Justice.

Out of deference to the earnest and forceful argument of appellant's counsel, this addendum to the original opinion is filed. As will be observed, notwithstanding the verdict finding appellant guilty of actionable negligence in several respects and conversely acquitting appellee on all issues of contributory negligence submitted, appellant insists that the record reveals an overriding error, that is, contributory negligence of appellee as a matter of law which should defeat recovery on his part.

Questions of this nature usually are difficult of solution, but we believe our appellate courts have settled upon a rule that should be of assistance in solving such questions. This rule was announced by Judge Funderburk in Wichita Valley Ry. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714, 716, col. 2, as follows: "However, one test of somewhat limited scope, recognized by good authority, has the merit of reasonable certainty in cases where applicable. * * * It is that, where the undisputed evidence shows the existence of a danger and that the plaintiff, or injured party, had knowledge or was chargeable with knowledge of the danger and exercised no care whatever, then there is shown a case of contributory negligence as a matter of law." (Citing a number of authorities.) The same rule was previously announced by Judge Gill in Bennett et al. v. St. Louis Southwestern Ry. Co. of Texas, 36 Tex.Civ.App. 459, 82 S. W. 333, 334. He said: "We think it un-

controvertible that the situation disclosed by the evidence demanded at the hands of deceased the exercise of some care. It is equally beyond dispute that he exercised absolutely none. It is certainly possible to disclose a case in which contributory negligence may appear as matter of law because of the undisputed facts, and the inevitable conclusion to be drawn therefrom. If this case is not of that character, we are unable to perceive the elements which it lacks to make it one." The same rule was also announced by Judge McClendon in Gulf, C. & S. F. Ry. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895, 896, col. 1, as follows: "* * * Where no care whatever has been exercised, our courts uniformly hold that contributory negligence exists as a matter of law, and recovery is denied. What acts of prudence as constituting ordinary care are required is usually a question of fact. * * *." Conversely, the courts hold, as said by Judge Funderburk in the case above cited, 78 S.W.2d 714, at page 717, col. 1, "* * * that, where there is evidence showing some care, and the question is one of the sufficiency of the care, a question of fact for the jury is presented." Citing Gulf, C. & S. F. Ry. Co. v. Gaddis, supra; Galveston, H. & S. A. Ry. Co. v. Price, Tex.Com.App., 240 S.W. 524, supra. In applying this rule it should be borne in mind that the law does not prescribe any particular acts or omissions as constituting ordinary care or its absence. .

So, we recur to the main question: On the occasion in question did appellee exercise any care whatever for his own safety and the safety of those with him? He had resided at Wolfe City for at least eight years from the time he was thirteen years of age, barring some two years service in the Navy; was familiar with the lay of the land, the location of the railway tracks, street lights, and crossing; but it is stated in the original opinion by Mr. Bond, Chief Justice, that the record fails to show that appellee knew or should have known in the exercise of ordinary care of the unusual, dangerous or hazardous conditions surrounding the crossing at "nighttime." Appellant's attorney seems to question the

accuracy of this statement; however, we are of opinion that it is immaterial whether he was or was not familiar with the crossing at night on previous occasions, as each crossing at night would present its own peculiar facts. On the occasion in question it was about 10 o'clock at night; the moon was not shining; the street lights were burning and cast their rays down and over the flatcar that obstructed the crossing, creating, somewhat of a curtain between it and appellee approaching from the north; obscuring his vision so that before seeing the flatcar he was practically upon it,—too close to apply his brakes before the collision. There was testimony by several witnesses to the effect that the crossing was in a low place and when approached from the north the street lights were "just exactly right to blind you and a flatcar being low, it is hard to see it until you are close upon it." Bearing upon this matter, in answer to interrogatory No. 16, the jury said: "The conditions surrounding the crossing in controversy on the occasion in question were such as to render that crossing more than ordinarily dangerous as a night time crossing." On cross-examination appellee was asked: "Do you think you could have seen that train if you had been looking that night?" Answered, "I was looking." And in this connection the jury found that on the occasion appellee did not fail to keep a proper lookout for his own safety. However it may be insisted that he should have slowed down his car or done something in addition to keeping a proper lookout. A complete answer to such insistence, if made, is that, as just shown, the law does not prescribe any particular acts or omissions as constituting ordinary care or its observance. In the situation presented it was the province of the jury to determine whether, under all the facts and circumstances, the care exercised by appellee was reasonable, —to which they answered in the affirmative.

As the record discloses that appellee did exercise some care, we do not think we could ignore the verdict of the jury and hold that he was guilty of contributory negligence as a matter of law.

Therefore, appellant's motion for rehearing is overruled.