**HOUSTON BELT AND TERMINAL COMPANY, Appellant,**

v.

**Estelle CHANCE, Appellee.**

**No. 3478.**

Court of Civil Appeals of Texas.

Eastland.

Jan. 29, 1960.

Rehearing Denied March 4, 1960.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

Funderburk, Murray & Ramsey, Hill, Lowry, Lee & Koster, Houston, for appellee.

COLLINGS, Justice.

This suit was brought by Estelle Chance, individually and as sole heir and community survivor of Charles H. Chance, against Houston Belt and Terminal Railway Company. Plaintiff sought to recover for the death of her husband, which occurred on September 18, 1956, and for damages under Article 5525, Vernon's Ann.Texas Civ.St. and the Texas death statutes, or Articles 4671 through 4678, V.A.T.C.S. Plaintiff alleged that her husband was crushed and killed during the early morning hours of September 18, 1956. She alleged that the accident occurred when a boxcar being pushed by an engine belonging to defendant and operated by its employees on a spur track negligently collided with a stack of drums or barrels and wooden platforms, or pallets, stacked and located near the spur track upon the premises of the Aquaness Corporation where Charles H. Chance was at the time employed and engaged in the performance of his duties.

The defendant, Houston Belt and Terminal Company, answered by general denial and further alleged that Chance was guilty of negligence proximately causing the accident, in failing to keep a proper lookout for his own safety and in failing to timely heed the warning of an employee

of the defendant. The Aetna Casualty and Surety Company intervened, seeking to recover the compensation death benefits and medical expenses paid under its workman's compensation insurance policy.

The trial court found that the evidence established conclusively and as a matter of law that the ·defendant was guilty of negligence proximately causing the injuries and death of Charles H. Chance, and that the evidence as a matter of law did not raise a fact issue on the question of contributory negligence on the part of the said Charles H. Chance. The court therefore withdrew those questions from the consideration of the jury and submitted only those issues involving damages. The jury found the amount of damages to be $80,539.42. Judgment was ·entered on the verdict for the plaintiff for $71,148.50 and in favor of the intervenor, Aetna Casualty and Surety Company, in the sum of $9,390.92. Houston Belt and Terminal Company has appealed.

Appellant railway company presents four points of error. In the first two points, it is urged that the court erred in withholding from the jury the questions of negligence and contributory negligence and in holding that the evidence . established conclusively and as a matter of law that appellant was guilty of negligence proximately causing the injuries and death of Charles H. Chance, and that the evidence as a matter of law did not raise a fact issue on the question of alleged contributory negligence on the part of Chance. Appellant's third and fourth points urge that the court erred in refusing to submit defendant's requested special issues numbers one to six, inclusive, which inquired concerning the existence of alleged contributory negligence on the part of Chance proximately causing his injuries and death.

The evidence shows that the accident occurred at approximately 6 :00 a. m., which was about daylight, on September 18, 1956, and that objects could be seen at the time without the use of a lantern. Defendant's employee Hess, although a fireman, was training to become an engineer and was operating appellant's engine in a switching operation. Mr. Self, who was an experienced engineer, was acting as fireman at the time. The engine had been pulling a car north on the Quitman Street Team Track until it cleared the Commercial Metal Company's switch preparatory to backing onto that track. Mr. Hess testified that as he pulled onto the Quitman Team Track, he saw some barrels setting close to that track and stopped the engine until Mr. Davis, a switchman who was riding on the front of the engine, gave him a signal to go ahead. After clearing the Quitman track he stopped the engine again and Mr. Henson, another switchman, threw the switch and gave him the signal to back up. Mr. Hess then started pushing the car backward in a southerly direction onto the switch or spur track alongside the property of the Aquaness division of the Atlas Powder Company, turning in a slightly southeasterly direction toward Commercial Metal Company's warehouse which was approximately 200 or 240 feet from the switch. The portion of the spur track as it passes along the property of the Aquaness division of the Atlas Powder Company is very little closer to that company's property than the adjacent portion of the Quitman Street Team Track. The evidence indicated that the difference at the point of collision was not more than six inches. As the engine began to move backward, Mr. Hess stated that he was watching the barrels closely; that they were close to the track, stacked in three of four tiers and in rows; that he then saw Mr. Chance standing somewhat toward the back of the barrels or drums and probably ten feet away from the spur track. He slammed on the brakes within two or three feet and within two or three feet further, collided with a wooden pallet; that Mr. Henson gave him a stop signal just before the collision and he did everything in his power to stop but it was too late; that he didn't know where Mr. Chance came from; that he saw Mr. Henson say something and motion with his hands; that he either heard Mr. Chance

say something or saw him make a gesture of some kind and that he, Mr. Hess, immediately grabbed the brake.

There was evidence to the effect that it was customary for a switchman to first ascertain that the track is clear before giving a signal to the engineer to move the engine. Mr. Henson testified that after he threw the switch he signaled the engineer to back up; that as the engine was moving backward, he turned and first saw Mr. Chance walk out from between the rows of barrels. Mr. Henson testified that he hollered to Mr. Chance to "move, move, move", and when he said "move" the third time, Mr. Chance did begin to move. Mr. Henson further testified that the spur track had been clear when they came by on the team track; that the team track was almost as close to the pallets and barrels as the spur track and no collision had occurred and that the boxcar had not moved more than thirty-five feet after he gave the back-up signal until it collided with the pallets and barrels; that the car made contact with a barrel or the wooden platform lying on top of some barrels or drums with its corner projecting toward the track; that when the car came into contact with the pallet, it was pushed or shoved toward Mr. Chance, causing him to be pressed against the drums; that the engine at the time was traveling at a maximum speed of one or two miles per hour. Mr. Hess testified that it was always close when they backed into this spur track and that he was looking at the barrels and down the track; that there was nothing to have hindered Mr. Henson's view of the barrels and pallets. Mr. Hess further testified that he used only the independent brakes because he had been taught that an engine could be stopped by the independent brakes as fast if not faster than with the automatic air brake and with less possibility of sliding; that he did stop within two or three feet.

There was evidence to the effect that the boxcar involved was fifty feet in length; that other boxcars in use were only forty feet long; that the longer the car, the further it will extend away from the track as it goes around a curve; that if a forty feet boxcar had been in use at the time instead of the fifty feet boxcar it would probably have made it around the curve without hitting the pallet or at least that the length of the car might have been the cause of the accident.

The burden was on appellee to establish negligence on the part of appellant railway company. This could be done by a jury finding, supported by evidence of probative force or by undisputed evidence conclusively showing negligence. In the latter event an instructed verdict would be proper. In determining the propriety of an instructed verdict an appellate court must view the evidence in the light most favorable to the party against whom the verdict was instructed. Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561; White v. White, Tex. Com.App., 141 Tex. 328, 172 S.W.2d 295. Generally, the question of whether or not there is negligence is one of fact. Fort Worth & D. Ry. Co. v. Barlow, Tex.Civ. App., 263 S.W.2d 278 (Ref.N.R.E.), and cases cited therein. It is only in the clearest cases, where the facts are undisputed, and are such that reasonable minds can draw but one inference or conclusion therefrom that a court is justified in finding the existence of negligence as a matter of law.

In our opinion the court erred in holding that as a matter of law appellant was guilty of negligence proximately causing the injuries to and the death of Charles H. Chance. The evidence did not show any alleged violation of law by appellant's employees proximately causing the accident. The evidence did not establish negligence as a matter of law by showing a total lack of care on the part of appellant's employees. Gulf, C. & S. F. R. Co. v. Gaddis, Tex. Com.App., 208 S.W. 895. On the contrary, the evidence, viewed in its most favorable light to appellant as required in such cases,

shows the existence of some care by appellant's employees. The question of whether that care was reasonable or due care under the circumstances was one of fact for the jury. Rio Grande, E. P. & S. F. R. Co. v. Dupree, Tex.Com.App., 55 S.W.2d 522; Henwood v. Gilliam, Tex.Civ.App., 207 S. W.2d 904 (Writ Ref.); Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683 (Writ Ref.).

 Appellant alleged that Charles H. Chance was guilty of contributory negligence in failing to timely heed the warning of appellant's employees. The burden, in accord with the general rule, was on appellant to show the existence of the alleged contributory negligence on the part of Charles H. Chance. Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W. 2d 224; Gulf, C. & S. F. R. Co. v. Shieder, 88 Tex. 152, 30 S.W. 902, 28 L.R.A. 538. The question of contributory negligence like that of original negligence becomes a matter of law for the court only when but one reasonable conclusion can be drawn from the evidence. Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. If there was any evidence of probative force tending to show a warning of danger to Chance by appellant's employees and a failure on the part of Chance to timely heed the warning, then issues of fact were raised which should have been submitted to the jury. Edmiston v. Texas & N. O. R. Co., Tex.Com.App., 135 Tex. 67, 138 S.W. 2d 526. There was evidence to the effect that an employee of appellant hollered to Mr. Chance to "move, move, move" when he saw Chance standing by the rows of barrels or drums. The evidence was to the effect that Mr. Chance did move but not until the employee had said "move" the third time. Mr. Chance was engaged in the course of his employment at the place where the barrels were stacked. Whether he placed them there or not is not shown. Even so, his opportunity under the circumstances to observe the closeness of the barrels and pallets to the tracks and to know of the inherent danger involved was as good

as that of appellant's employees. These facts and circumstances in our opinion presented fact issues on the question of contributory negligence. Texas & N. O. R. Co. v. Blake, supra; El Paso City Lines v. Stanley, Tex.Civ.App., 209 S.W.2d 810 (Writ Ref.). The court erred in refusing to submit such issues to the jury and in holding as a matter of law that contributory negligence was not shown.

The judgment of the trial court is reversed and the cause is remanded.