E. F. HAMMON, Appellant,

v.

TEXAS & NEW ORLEANS RAILROAD COMPANY, Appellee.

No. 52.

Court of Civil Appeals of Texas.

Tyler.

July 16, 1964.

Rehearing Denied Sept. 24, 1964.

Raymond L. McDermott, Mabel Grey Howell, Houston, for appellant.

Richard B. Miller and R. Gordon Gooch, Baker, Botts, Shepherd & Coates, Houston, for appellee.

MOORE, Justice.

This is an action by E. F. Hammon, a brakeman, to recover damages under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., by reason of a derailment of the switch engine on which he was riding while engaged in the performance of his duties as a brakeman. Upon the trial of the cause, the jury returned a verdict for the defendant. Based upon the verdict the court entered judgment in favor of the railroad company, to which plaintiff duly perfected this appeal.

The pertinent portion of the plaintiff's pleadings, alleging negligence on the part of the defendant was as follows:

" * * * On or about October 17, 1960, Plaintiff was employed as a switchman by the defendant and was acting within the course and scope of his employment for the defendant in Harris County, Texas, when he suffered severe bodily injuries. On such occasion, an old, worn out, defective track of the defendant gave way with the engine of the defendant which was operating thereon when a rail of such track broke resulting in the rail springing up and knocking with great force the plaintiff from the engine. Plaintiff was thrown to the ground and in so doing, struck both knees and legs forcibly against metal portions of the engine. Plaintiff suffered a severe traumatic shock and injuries hereinafter detailed. The occurrence made the basis of this suit resulted from the negligence and carelessness of employees and representatives of the defendant, other than your plaintiff. Such negligence was a proximate cause of the occurrence made the basis of this suit and of the injuries and damages suffered by Plaintiff."

The defendant, by appropriate pleadings, denies these allegations and pleads unavoidable accident. In answer to the special issues submitted by the Court, the jury found (1) that defendant did not fail to "maintain" its track in such a manner as would have been done by a reasonably prudent railroad company in the exercise of ordinary care; (2) that the accident was unavoidable, and (3) that plaintiff suffered special damages in the amount of $1,261.00, and general damage in the amount of $5,-

000.00. No other issues were requested or submitted. The single objection to the charge leveled by the plaintiff was to the effect that there was no evidence to support the submission of the unavoidable accident issue.

Plaintiff now claims error on the part of the trial court in denying his motion for a new trial; in submitting an issue on unavoidable accident; in rulings on evidence and on the court's failure to declare one of the jurors disqualified. Each will more fully appear hereinafter.

Plaintiff produced testimony showing that on the occasion in question he was working as a member of the switching crew, which was in the process of "spotting" a loaded box car at a warehouse on what is known as the old Oriental Textile Industrial track in Harris County, Texas; that the engine being used was a diesel switch engine weighing approximately 232,000 pounds; that immediately before the derailment, the engine and the loaded car had passed over the track and the car had been "spotted"; that as the engine was backing out of the industrial track, toward the main line, at a speed of about 6 to 8 miles per hour, he, together with a fellow employee, was riding on the front footboard on the front of the train, which was situated immediately above the rail; that the engine suddenly became derailed and rolled along across ties and then re-railed itself; that in the process, the rail under the footboard where plaintiff was standing broke in two places, causing the end of the rail to "kick up" and strike the footboard; that the impact knocked the footboard loose from the steel support, causing a portion of the footboard and the supports to strike him on the knees and abdomen; that he was knocked off the footboard, falling upon his knees upon the tracks; that he suffered an injury to both knees, causing them to bleed; that after being given first aid at the company hospital, he went home where he remained for two days before returning to work; that his knees and legs continued to bother him, and after returning to the company hospital

for treatment on two other occasions, he employed Dr. F. O. McGee, some three weeks after the injury, who continued to treat him until July, 1961, at which time he operated upon plaintiff's left knee; that thereafter he was off from work for 8 months, after which he returned to his regular employment as a switchman in March, 1962, where he continued to work to the date of the trial.

According to the plaintiff, and three of the members of the switching crew, the section of the industrial track where the rail broke had been in a state of disrepair for the past fifteen years. They testified, in substance, that during that period of time none of the cross ties supporting the rail had been replaced; that the ties were rotten and decayed; that a great number of the spikes holding the ties to the rail were missing; that there was no ballast around the ties to hold them in place; that the rail was a small rail, being what is known as a 60-pound rail and had been in use for many years; that it was rusty and worn, and that the track was rough and the train "wobbled" as it passed over the point where the rail broke.

Defendant called as its witness, Pat Neely, the road master in charge of the maintenance and repair of defendant's industrial tracks in the area. According to his testimony, this particular section of track in question had been out of service from about 1943 to 1955, because during the war years the railroad did not have any industries located along this section of the track that required switching services. In 1955, some five years before this accident made the basis of this suit, Neely testified that under Neely's supervision, this section of the track had been completely re-habilitated and had been placed in first class operating condition. The track was raised some three or four inches; the rails were checked for defects and approximately one-third of the cross ties were replaced; that the weight of the rail was 60 pounds to the yard; that this type of rail was in general use on industrial tracks, not only by de-

fendant but by other railroads in the area. He testified that he and his assistant and the regular track inspector, made regular inspections of the company's industrial track and that the section of track in question was inspected once a week, for which a check was made for rotten ties, loose spikes, defective rails and ballasts, as well as being inspected for low places in the track by the use of a level, but that he had not found or had any defect reported to him, and that the track was in good condition at the time of the derailment. He further testified that the breaking of rails was a common occurrence in the operation of a railroad and that a change in the weather was the most common cause, but that on some occasions a rail will break because of a defect in the metal. He further testified that the company used electronic equipment to search for defects and breaks in the rail on main lines, but that the use of such equipment was not practical on industrial tracks because of the dirt and debris.

One of plaintiff's witnesses, W. B. Kyle, testified that the condition of the track on the date of the trial was the same as that on the date of the derailment. J. W. Dukes, a track inspector for defendant, testified that while he was not the track inspector prior to the accident, that at the time of the trial, the track was in good condition.

There was no testimony describing the condition of the rail after the break except that the rail was broken in two places.

Plaintiff, in his first three points, contends that under the above factual situation, he has proved negligence as a matter of law and if not, then in the alternative he contends that there is no evidence to support the negative finding of the jury on Special Issue No. 1, or at least is insufficient evidence to support the finding.

 The burden of proof was upon the plaintiff to establish negligence on the part of the defendant railway company by a preponderance of the evidence. This burden could have been discharged by obtaining a jury finding, supported by evidence of probative force or by undisputed evidence conclusively showing negligence. Having failed to obtain a jury finding of negligence, plaintiff now contends that he established negligence as a matter of law. Under the facts presented in this record, we are not prepared to hold that the evidence showed defendant guilty of negligence as a matter of law, nor can we say that the verdict fails to find support in the evidence. To so hold would be to say that the defendant, as a matter of law, failed to use the care of an ordinary prudent railroad company in maintaining its track. It was undisputed that the train derailed and the rail was found to be broken. It was not shown, however, whether the broken rail caused the derailment or whether the derailment and the subsequent re-railment caused the break. Although it seems to be conceded that the break was a new break, there was no testimony linking the break to any defect in the rail itself. The switch engine, together with the car, had passed over the place of the break only moments before the derailment without incident. Hence, we think that the jury could have reasonably concluded that if there was a defect in the rail, same was such that it would not have been detected by a reasonable inspection and was not, therefore, under the circumstances, negligent in the maintenance of its track in failing to inspect for defects in the rail. The only other possible cause for the derailment and the breakage of the rail would be because of the fact that the rail was not properly supported by the ties, spikes and ballasts. Under the testimony, we think the jury could have concluded, as they did, that the defendant was not negligent in failing to properly maintain proper support for the rail. Though the evidence may have raised the issue of negligence, which we need not decide since the verdict was for the defendant, the jury was not compelled to accept the plaintiff's version of the condition of the track but was at liberty to accept the version of the defendant. Under these circumstances, we would not be justified in holding that plaintiff es-

tablished negligence by an undisputed preponderance of the evidence. Generally, the question of whether or not there is negligence is one of fact. It is only in the clearest cases, where the facts are undisputed, and are such that reasonable minds can draw but one inference or conclusion therefrom, that a court is justified in finding the existence of negligence as a matter of law. Fort Worth & D. Ry. Co. v. Barlow, Tex. Civ.App., 263 S.W.2d 278; Houston Belt & Terminal Company v. Chance, Tex.Civ. App., 332 S.W.2d 430. The evidence did not show any alleged violation of law by Defendant's employees proximately causing the accident. The evidence did not establish negligence as a matter of law by showing a total lack of care on the part of defendant or its employees. On the contrary, the evidence viewed in its most favorable light to defendant as required in such cases, shows the existence of some care by defendant and its employees. The question of whether that care was reasonable or due care under the circumstances was one of fact for the jury. Rio Grande, E. P. & S. F. R. Co. v. Dupree, Tex.Com. App., 55 S.W.2d 522; Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683; Cole v. Missouri-Kansas-Texas R. Co. of Texas, Tex.Civ.App., 179 S.W.2d 343; Mosby v. Texas & P. Ry. Co., Tex.Civ.App., 191 S.W.2d 55; Henwood v. Gilliam, Tex. Civ.App., 207 S.W.2d 904; Adkins v. Texas & P. Ry. Co., Tex.Civ.App., 233 S.W.2d 956; Houston Belt & Terminal Company v. Chance, supra; Conser v. Atchison, T. & S. F. Ry. Co., 266 S.W.2d 587, Sup.Ct.Mo. The effect of the jury's verdict is to say that in so far as plaintiff was concerned, the defendant discharged its duty of exercising due care in the maintenance of its track. To hold defendant responsible to a greater degree of care would be to impose liability without fault.

"The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." Ellis

v. Union Pacific Ry. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572.

Plaintiff contends under point four that the judgment should be reversed because the negative answer of the jury to special issue No. 1, finding no negligence, is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

Ordinarily, this assignment requires the Courts of Civil Appeals of this state to sift and re-weigh all of the testimony in the record, both that supporting the verdict, along with the other evidence in the case, including that which is contrary to the verdict, and then to determine, whether as a matter of fact, the verdict and judgment of the court is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. In Re King's Estate, 150 Tex. 662, 244 S.W. 2d 660. However, in view of the holding in Deen v. Hickman, 353 U.S. 925, 77 S.Ct. 715, 1 L.Ed.2d 721, reversing the Supreme Court of Texas in Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933, holding that the Texas Supreme Court was in error in reversing the cause to the Court of Civil Appeals for a determination of the question of whether the verdict of the jury was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust, we express some doubt as to whether this court has any authority to re-weigh the evidence and then substitute our judgment in place of that of the jury. As was demonstrated there, such procedure would no doubt be prohibited in a case where a recovery had been allowed a plaintiff. Ellis v. Union Pacific Ry. Co., supra; Rogers v. Missouri Pacific Ry. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493. If this be true, then we can perceive of no just and valid reason why the same rule should not also be applied in a case where the verdict has been rendered for the defendant. This view would seem to find support in the holding of the court in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed.

'916, wherein the court held that factual issues cannot be relitigated by the reviewing courts, stating that it is "only when there is a *complete* absence of probative facts to support the conclusion reached (jury) does a reversible error appear."

Suffice it to say, however, we have examined the entire statement of facts consisting of 589 pages and find that we are unable to say as a matter of fact that the verdict of the jury is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

Points five through eight complain of the action of the trial court in submitting Special Issue No. 3, inquiring as to whether or not the occurrence in question was the result of an unavoidable accident. Plaintiff takes the position that there is no evidence, or at least insufficient evidence, to raise the issue, and further that the verdict finding the accident to be unavoidable is contrary to the overwhelming weight and preponderance of the evidence. He further contends that since such an issue is not a controlling issue under the Federal Employers' Liability Act, the mere submission of the issue was prejudicial.

No objection was made in the trial court on the ground of the prejudicial effect of the submission of the issue.

██ In view of the failure of the jury to find any primary negligence on the part of the Defendant, we are of the opinion that the submission of the unavoidable accident issue, or any alleged error with respect thereto, becomes immaterial. Brown v. Dallas Gas. Co., Tex.Civ.App., 42 S.W.2d 869, writ ref.; Smith v. Morgan, Tex.Civ. App., 235 S.W.2d 938; Adkins v. Texas & Pac. Ry. Co., supra; Blanton v. E & L Transport Co., 146 Tex. 377, 207 S.W.2d 368. In a situation where the plaintiff has failed to discharge his burden of establishing his cause of action by failing to prove any act of primary negligence, the submission of other issues would be harmless. Rule 434, T. R. C. P.; Neal v. Lykes Bros.

Steamship Co., 5 Cir., 306 F.2d 313. Quinterno v. Sinclair Refining Co., 5 Cir., 311 F. 2d 217; Brown & Root v. Haddad, 142 Tex. 624, 180 S.W.2d 339, 342.

██ Point nine complains of the action of the trial court in failing to declare a mistrial grounded upon the violation by defense counsel of a motion in limine requiring him to refer to or make mention of the fact that plaintiff had had a prior suit for personal injuries or a claim therefor.

Points ten and eleven assert error of the trial court in failing to grant plaintiff a new trial because of the alleged error of the court in not excluding evidence of the prior injury and the claim based thereon.

In granting the motion in limine, the court ruled that Defendant was not to elicit testimony showing plaintiff had made other claims for injuries or had filed any suits for injuries or engaged attorneys to represent him in connection therewith, or had received any settlements unless he had first discussed the matter with the court. On direct examination of the plaintiff by his attorney, it was brought out that in November, 1952, plaintiff had been seriously injured in an accident while working for defendant, as a result of having been knocked from the top of a car. Plaintiff testified that he received injuries to his back and ribs on the left side and had developed stomach trouble; that he suffered pain with these injuries for about four years, but that all of his previous injuries had healed except for the stomach condition which still bothered him. He testified he had been told that his previous injuries were going to be permanent. He also testified that approximately six months before the receipt of the present injury, he had sprained his right leg and knee, by stepping in a hole while employed as a switchman for the defendant, but that within a few days it had healed.

Upon cross examination, without objection, plaintiff admitted that he had claimed in the 1952 accident that he had sustained permanent injuries, and that he would never recover from the back injury, but that

he had gotten over the injury but did not know the date. He was then asked as to whether he had given sworn testimony in that case in Judge Snell's Court. At this point counsel for the plaintiff objected to the violation of the motion and order in limine and moved for a mistrial. The court overruled the motion.

Eliciting testimony from the plaintiff that he had testified in court in connection with his 1952 injury, was no doubt a violation of the order of the court. The effect of such testimony was to show that the plaintiff had actually made a claim upon the previous injury and had filed a suit in court thereon. Counsel for the plaintiff did not, however, request the court to instruct the jury not to consider the testimony, but took the position then, that he does now, that the harmful effect of the testimony was such that it so prejudiced the jury that he should have been granted a mistrial. He contends that the harm was demonstrated by the fact that the jury failed to find in his favor on the issue of primary negligence and awarded what he considers to be an inadequate amount of damages. The fact that the jury did award some damages, would seem to indicate that even though the jury was informed that he had testified in court in regard to his 1952 injury, there was no prejudice on the part of the jury. If there had been prejudice, we think the jury would have more likely awarded no damages.

Liability in this case was predicated upon the proposition of whether or not defendant failed to use ordinary care in maintaining its track. In order to say that the conduct of counsel in eliciting this testimony before the jury, showing that he had had a prior lawsuit, probably caused the rendition of an improper judgment, we would first be compelled to conclude from a review of the record that but for the conduct and the testimony elicited, the jury would probably have answered the issue in such fashion as to impose liability on the defendant. We are not prepared to so hold. The deliberations of the jury in attempting to decide as

to whether or not the defendant failed to use due care in maintaining its track would not, in our opinion, be affected by the fact that the plaintiff had testified in court on a previous claim. It is not enough to say that this testimony might have possibly caused the jury to have answered the issue contrary to his contention. Aultman v. Dallas Ry. & Term. Co., 152 Tex. 509, 260 S.W.2d 596, 600; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277, Rule 434, T.R.C.P.

By points ten and eleven, complaint is made to numerous other questions propounded to plaintiff by counsel for defendant concerning his 1952 injuries and what he claimed in connection therewith. Most of the questions and answers thereto went into the record without objection. In the presentation of these points, counsel does not refer to pages of the transcript where the supporting assignments may be found; nor are the "series of questions", which are claimed prejudicial and harmful, brought forward in the brief. We think this fails to comply with Texas Rules of Civil Procedure, Rule 418(c), and would prevent our considering any error in connection therewith. Moreover, we think that if the interrogation of the plaintiff in connection with his previous claim had been so prejudicial as now complained of, counsel should, in addition to making a timely objection, have again moved for a mistrial; absent which, the error, if any was waived. Safety Cas. Co. v. Bennett, Tex.Civ.App., 259 S.W.2d 596.

■ Plaintiff contends by his twelfth point that the trial court erred in refusing to grant a new trial for the reason that the answer by the jury in Special Issue No. 5 in assessing $5,000.00 was so inadequate for the bodily injuries sustained by the plaintiff that the answer is so contrary to and against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. As pointed out hereinabove, since the jury failed to find any act of primary negligence which would impose

162

liability upon the defendant, we believe the jury's answer to the damage issue becomes immaterial, and therefore, any discussion thereon would be purely academic. Shell Oil Co. v. Dennison, Tex.Civ.App., 132 S.W.2d 609; Garza v. San Antonio Transit Co., Tex.Civ.App., 180 S.W.2d 1006.

 Point thirteen complains of the action of the court in overruling Plaintiff's challenge for cause upon one of the prospective jurors, thus forcing plaintiff to take an objectionable juror. The question propounded the juror by plaintiff's counsel was whether or not the juror's experience in investigating accidents on behalf of the company he worked for might operate to the detriment and prejudice of plaintiff, to which the juror answered in the affirmative. As we read this juror's testimony, he testified that the only reason that he said that his previous experience might operate to the detriment and prejudice of the plaintiff was because he felt that if there was any question raised as to his fairness, he wanted to disqualify himself. Upon being questioned by the court, he stated that was the reason he gave such an answer, and then affirmatively assured the court that his previous experience would not in any way affect his ability to be completely fair and impartial. A review of the jurors testimony compels us to conclude that a question of fact was presented to the trial court as to whether or not the juror could be said to have been biased or prejudiced. Although the juror testified that his previous experience "might" have some effect upon his verdict, he never at any time said it "would" affect his verdict. McBroom v. Brown, Tex.Civ.App., 277 S.W.2d 310; Swap Shop v. Fortune, Tex., 365 S.W.2d 151.

Furthermore, we think the error, if any, was harmless. No objection was made to any other juror during the trial and the challenged juror did not serve. After an adverse verdict, upon the hearing for a new trial, plaintiff for the first time made it known that one of the jurors who served at the trial was in fact objectionable. We think that in order to complain, plaintiff would be required to show that prior to the exercise of his pre-emptory challenges, he apprized the trial court that one of the jurors was obnoxious to him and that he would have challenged that juror had he not been forced to exhaust a challenge on an objectionable juror. Galveston, H. & S. A. Ry. Co. v. Keesey, 50 Tex.Civ.App. 463, 110 S.W. 170; Kansas City, M. & O. Ry. Co. of Texas v. Weaver, Tex.Civ.App., 191 S.W. 591.

The judgment of the trial court is affirmed.