FORT WORTH & D. RY. CO.

v.

BARLOW.

No. 15462.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 20, 1953.

Rehearing Denied Dec. 18, 1953.

Seth W. Barwise and J. C. Whitehurst, Fort Worth, Benson & Benson, Bowie, O. O. Touchstone, Dallas, for appellant.

Donald & Donald, and T. B. Coffield, Bowie, for appellee.

BOYD, Justice.

Appellee Mrs. Ola Barlow recovered judgment for $22,120 against appellant Fort Worth & Denver Railway Company for damages resulting from a collision in which her husband, Milton R. Barlow, lost his life.

The deceased met his death in a collision between a truck he was driving accompanied by appellee, and appellant's train at Lowry Crossing, between Bowie and Bellevue, about 8:50 p. m., December 6, 1950. The night was dark, the weather was cold, but there was no rain, snow, or fog. Deceased and appellee had been familiar with the crossing for many years, having lived near it most of the time for the last forty years, and were living near it at the time of the tragedy. The deceased had crossed the railroad at this point almost daily for some years. On the evening of the accident deceased and appellee had used the crossing on their way to visit in the home of Fred Barlow, a brother of deceased, who lived about two hundred yards northeast of the crossing. They started home at 8:50 p. m. and the collision occurred a few minutes thereafter.

Appellee alleged many acts of negligence on the part of appellant, all of which were decided against her by the jury, except that at the crossing the rails protruded above the ballast in such manner as to render the crossing unsafe for the traveling public; that appellant knew, or could have known by the exercise of reasonable diligence, of its unsafe condition; that such condition of the crossing was negligence, and was a proximate cause of the collision. The jury failed to find that the deceased was negligent in any of the particulars inquired about.

By its first point appellant contends that the deceased was guilty of contributory negligence as a matter of law.

Appellee testified that as they approached the crossing the truck was stopped twenty to thirty feet east of the east rail; she and deceased knew the railroad was there, although there was a warning sign; after stopping, both looked to the right and to the left and listened for a train, but saw or heard none; had there been any blowing of a whistle or any ringing of a bell they would have heard it; deceased had good hearing and good eyesight; the truck windows were closed; having seen or heard no indication of an approaching train, they proceeded to the track; the truck was then traveling seven or eight miles per hour; it seemed like when the front of the truck went over the rails it ceased to move forward, but bumped up and down; it just hung, wedged in there; it bumped up and down and would not pull out; she did not say how long they were on the track before the impact; while they were on the track, deceased saw the lights of the approaching train, and asked appellee if that was a train coming, and she replied that it was; he then said, "Let's get out;" he told her to jump; appellee got out through the right door, fell down, but got up and got to the back of the truck and in the clear when the train passed by; the last time she saw deceased he was turning loose of the steering wheel and was moving his body like he was getting out. Although the headlights of a train coming from the north, as the train in question came, would be visible to a person at and near the crossing when the train came over Elser Hill, some 4200 feet from the crossing, the evidence was conflicting as to whether, on account of the topography of the country, they would disappear from view before reaching the crossing.

After the collision, portion of deceased's body were found along the track for more than one thousand feet. There was blood on the seat and on the floor of the truck, and its left door was open. The train was about five hours late; there was evidence that it was running about sixty miles per hour, that its headlights were shining, its bell ringing, and its whistle blowing.

The jury failed to find for appellee on any of the issues involving these matters.

■ It is settled that whether there is negligence is a question of law when reasonable minds can come to but one conclusion; and where the conclusion is inescapable that the injured party was guilty of negligence proximately causing his injuries there is no issue for the jury. Gulf, C. & S. F. Ry. Co. v. Gaddis, Tex.Com. App., 208 S.W. 895; Jones v. Sunshine Grocery & Market, Tex.Civ.App., 236 S.W. 614; Burnett v. Ft. Worth Light & Power Co., 102 Tex. 31, 112 S.W. 1040, 19 L.R.A. N.S. 504; Cross v. Wichita Falls & S. R. Co., Tex.Civ.App., 140 S.W.2d 567; Cisco & N. E. Ry. Co. v. McCharen, Tex.Civ. App., 118 S.W.2d 844; International & G. N. R. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106; Wichita Valley Ry. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714; Napier v. Mooneyham, Tex.Civ.App., 94 S.W.2d 564; Texas Mexican Ry. Co. v. Hoy, Tex.Com. App., 24 S.W.2d 18; Standard Paving Co. v. Webb, Tex.Civ.App., 118 S.W.2d 456. The basis for the holdings in such cases appears to be that the injured parties took no care for their own safety and made no effort to avoid the happenings resulting in their injuries.

■ The general rule, however, is that whether there is negligence is a question of fact. Lone Star Gas Co. v. Fouche, Tex.Civ.App., 190 S.W.2d 501, writ refused w. m.; Swiff v. Michaelis, Tex.Civ. App., 110 S.W.2d 933, writ dismissed; Coleman v. West, Tex.Civ.App., 116 S.W. 2d 870; McCullough Box & Crate Co. v. Liles, Tex.Civ.App., 162 S.W.2d 1055, writ refused w. m.; Lackey v. Moffett, Tex. Civ.App., 172 S.W.2d 715; Humble Oil & Refining Co. v. Ooley, Tex.Civ.App., 46 S. W.2d 1038, writ dismissed; Linkenhoger v. Gilbert, Tex.Civ.App., 223 S.W.2d 308, writ refused n. r. e.; Oil City Iron Works v. Stephens, Tex.Civ.App., 182 S.W.2d 370; Horton v. Benson, Tex.Com.App., 277 S. W. 1050; Texas & N. O. R. Co. v. Blake, Tex.Civ.App., 175 S.W.2d 683, writ re-

fused; Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332.

We think the rule to be deduced from the cited cases is that an injured party will not be deemed guilty of contributory negligence as a matter of law when there is some explanation, comportable with reason, why he did not see the object with which he collided in time to avoid the impact. When some care is shown, the question of its sufficiency is for the jury. Gifford v. Fort Worth & D. C. Ry. Co., Tex.Sup., 249 S.W.2d 190; Texas & N. O. R. Co. v. Blake, supra; Wichita Valley Ry. Co. v. Fite, supra.

■ This is not a case where the injured party proceeded to and upon a railroad track with an entire lack of care; and we are of the opinion that whether he exercised the degree of care that an ordinarily prudent driver would have exercised under the same or similar circumstances was a question for the trier of the facts.

■ Another point is that it was error to submit issue No. 7 and its group of correlative issues, No. 7 being, "Do you find from a preponderance of the evidence that immediately prior to the collision in question the rails of the railroad crossing in question protruded above the ballast in such a way as to render same unsafe for the travelling public?" And then the jury was asked if appellant's employees knew or by the exercise of reasonable diligence could have known of such unsafe condition; if such condition was negligence; and a proximate cause of the collision. All of these issues were answered in the affirmative, such answers constituting the only finding of negligence on the part of appellant. A number of objections were made to these issues, and each was objected to on the ground that it was on the weight of the evidence, and was irrelevant, immaterial, incompetent, and prejudicial.

We cannot escape the conclusion that issue No. 7 was on the weight of the evidence

and assumed that the rails protruded above the ballast. The evidence was in direct conflict as to whether the rails protruded above the ballast to any extent, as well as to whether the crossing was "unsafe." The witness Reeder, an employee of appellant, who was on the train, testified on direct examination that he examined the crossing immediately after the collision and that " * * * it is graveled up level with the top of the rails, with the exception of where the flange or wheel runs alongside the rail, and it is level over the crossing, and then there is a drop down to the highway. * * * It was a smooth crossing over the track." On cross-examination he testified as follows:

"Q. Now, you said this area wasn't exactly level, that the rails were a little higher than the ground on either side, is that correct? A. No, sir.

"Q. What did you say? A. I said from the fence up to the rails there was a slight incline.

"Q. All right. A. And the gravel between the rails was level, and then it begins dropping off toward the highway.

"Q. A slight incline from the approach up to the rails is what you meant, wasn't it? A. From the right-of-way fence.

Q. Up to the rails? A. Yes, sir."

The witness Henigan testified that the gravel was up about even with the track; and to the question, "Now, where was the gravel, the top of the gravel, with reference to the ball or top of the rails as you saw it there that night?" he answered, "It was just about level with the track." Moreover, photographs in the record taken by an apparently disinterested party on the night of the accident indicate that the chat was almost, if not quite, level with the top of the rails.

We believe that since issue No. 7 assumed a disputed fact, its submission was error requiring a reversal. Speer's Special Issues, p. 254, sec. 195, and cases cited in note 15; 41–B Tex.Jur., p. 638, sec. 483.

In its brief and oral argument appellant also insists that issue No. 7 imposed an illegal burden upon it, in that it required appellant to keep the crossing "safe for the travelling public," which made appellant liable as an insurer, contrary to Articles 6320 and 6327, Vernon's Ann.Tex.Civ.St., which provide that the company must keep its crossing in such state of repair as not to unnecessarily impair its usefulness, and keep it in proper condition for use of the traveling public.

The only part of the objection which might be deemed to cover the point is that the issue is irrelevant, immaterial, incompetent, and prejudicial. In view of another trial, when the matter may not be presented in the same way, we do not extend this opinion to consider whether appellant's objection was sufficient to call the court's attention to the supposed vice in the issue, or whether the objection, if sufficient, is valid.

 Appellant insists that the court erred in submitting the issues as to negligence of the deceased, in that if negligence was found, the jury was asked if such negligence "was a proximate cause" of the injuries, instead of being asked if such negligence "proximately contributed" to the injuries. The jury did not find, however, that deceased was guilty of any negligence, and such "proximate cause" issues were not answered. But regardless of that fact, we are unwilling to hold that the issues were erroneously submitted. " * * * It has been said that there is no substantial distinction or essential difference between negligence for which defendant is responsible and contributory negligence; the standards and tests for determining contributory negligence ordinarily are the same as those for determining negligence, and the rules of law applicable to the former are, in general, applicable to the latter. * * * " 65 C. J.S., Negligence, § 116, p. 707. See also Moore v. Chicago Bridge & Iron Works, 183 N.C. 438, 111 S.E. 776; Government Street R. R. Co. v. Hanlon, 53 Ala. 70; Dexter v. McCready, 54 Conn. 171, 5 A. 855; Ladow v. Oklahoma Gas & Electric

Co., 28 Okl. 15, 119 P. 250; Pitman v. City of El Reno, 2 Okl. 414, 37 P. 851; Stokes v. Ralpho Tp., 187 Pa. 333, 40 A. 958; Pope v. Jackson, Tex.Civ.App., 211 S.W.2d 958; Cook v. Chapman, Tex.Civ. App., 45 S.W.2d 797, writ refused; Williams v. Zang, Tex.Com.App., 279 S.W. 815; Koons v. Rock, Tex.Com.App., 295 S.W. 592.

Appellant alleged that deceased was guilty of negligence in that he violated Article 6701d, § 86, V.A.T.C.S., which provides that whenever a person driving a vehicle approaches a railroad crossing the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail and shall not proceed until he can do so safely when a railroad engine approaching within 1500 feet of the crossing emits a signal audible from such distance and such engine by reason of its speed or nearness to such crossing is an immediate hazard, and when an approaching train is plainly visible and is in hazardous proximity to such crossing. It requested issues, among others, inquiring if the deceased failed to comply with such statute, which were refused.

In the view we take of this matter it is unnecessary for us to determine whether some of appellant's requested issues were improper, in that in asking if deceased "failed to comply" with the provisions of the statute, they were asking the jury for legal conclusions instead of findings of fact. In addition to the issues asking if deceased "failed to comply," appellant requested other issues which were refused by the court, and error is thereby assigned. In view of another trial, we shall discuss only one, which is: "Do you find from a preponderance of the evidence that deceased, Milton R. Barlow, drove his truck on to the railroad crossing into the path of the train when same was in full view of deceased?" and followed by issues as to its being negligence and proximate cause.

The careful trial court undertook to apply Art. 6701d in his charge; but we are inclined to the opinion that the issues submitted fail to cover the defense pleaded by appellant. The jury found that: Deceased, as he approached the crossing, did not fail to look for the approaching train; he failed to see the approaching train, but such failure was not negligence; he did not fail to stop within fifty feet and not less than fifteen feet from the nearest rail; as he proceeded to the crossing he did not know a train was approaching within approximately 1500 feet of the crossing, so as to be an immediate hazard by reason of its speed and nearness to the crossing; as he proceeded to the crossing he did not have knowledge of an approaching train, plainly visible and in hazardous proximity to the crossing; he did not fail to keep a proper lookout for trains which might be approaching the crossing; as he approached the crossing he did not fail to listen for defendant's approaching train; he did not observe the train before going upon the track; he did not intentionally stop his truck on the track directly in front of the approaching train; as he approached the crossing he failed to hear the train, but such failure was not negligence.

The statute provides that the driver of a vehicle approaching a railroad crossing, after stopping, shall not proceed under the circumstances mentioned therein, "until he can do so safely". While it is not believed that the statute required deceased to know that a train was not approaching before he should proceed, it did require him at least to exercise a high degree of care to determine that a train was not coming. In Kline v. Pennsylvania R. Co., 6 Cir., 9 F.2d 290, 292, the construction of a similar statute was involved. It required the driver of a school bus to bring his vehicle to a full stop before crossing the track of any railroad, and not to proceed across such track "until absolutely certain" that no train is approaching from either direction. The driver was injured in a collision with a train at a crossing, and it was held that if he failed to perform the duty imposed on him by the statute, and so contributed to his own injury, he could not recover. The court rejected the railroad's contention that

284

it was the driver's duty to know that a train was not coming before he proceeded across the track, pointing out that one may be "absolutely certain" that a train is not coming when in fact it is, and then said: "What the statute requires is the stopping of the vehicle, and the exercise of the highest degree of care permissible under the circumstances to determine whether a train is approaching, * * *."

█ In the instant case the jury found that after deceased stopped he looked and listened but did not see or hear the train. It did not determine whether he drove the truck on to the crossing into the path of the train when it was in full view. The requested issue leaves out knowledge on the part of deceased. It does not inquire about his state of mind. It inquires if a certain event took place. Deceased stopped, looked, listened, failed to see or hear the train, and proceeded. Had he done less, he would have been negligent irrespective of the statute. That it was the intention of the Legislature to add something more to the duties of drivers than is placed upon them by the common law and prior statutes is shown by the Emergency Clause, § 157, Acts 1947, 50th Leg., ch. 421, p. 1002: "The fact that present laws regulating traffic on highways are obsolete or inadequate for curbing of highway fatalities by failure to provide uniform and modern regulations creates an emergency * * *."

We think the inclusion of the requested issue would have relieved the charge of some of the criticism to the effect that deceased's knowledge rather than his care appears to have been made the test of his duty.

Furthermore, we are inclined to believe that the requested issue was proper as a ground of common law negligence, without reference to Art. 6701d. "It is always train time at a railroad crossing, * * *." 75 C.J.S., Railroads § 768, p. 13; High v. Waterloo, C. F. & N. Ry. Co., 195 Iowa 304, 190 N.W. 331; Robison v. Atlantic Coast Line R. Co., 179 S.E. 493, 184 S.E. 96. If deceased "drove his truck on to the

railroad crossing into the path of the train when same was in full view of deceased," the court had a right to know it.

█ Appellant earnestly insists that issue No. 15, inquiring if the jury found from a preponderance of the evidence that deceased "intentionally stopped his truck on the railroad track directly in front of the approaching train," was prejudicial error. Its objection to the issue was as follows: "* * * there is no pleading to support said issue as framed and submitted by the Court, and the issue, as framed, and submitted by the Court, is prejudicial to the defendant. The issue as framed by the Court requires a degree of proof on this affirmative defensive issue by the defendant not plead by the defendant nor raised by any testimony in the record, and same is highly prejudicial." Since the issue was a defensive one, appellant's objection appears to have been sufficient.

We are not left to our imaginations to get a picture of what use could be made of that issue. Counsel for appellee said: "* * * He didn't intentionally drive up on that track and he didn't intentionally refrain from getting out, and there is not a line of testimony, not a suggestion, not a surmise that would indicate anything like that, and I know you are not going to convict him of suicide, * * *;" and "'Do you find from a preponderance of the evidence that on the occasion in question deceased, Milton R. Barlow, intentionally * * *.' All right, now where is there one iota—you can't show me a fly speck that would indicate that he intentionally did anything. He didn't know the train was coming. He didn't hear any whistle, according to Mrs. Barlow. He didn't hear any bell. There was no light until they got right on the crossing, and that 100 or 110 miles an hour train bearing down on them. Therefore, gentlemen, I say to you, you should answer No. 15 no. The idea, wanting you gentlemen to say when the evidence doesn't say."

Error is assigned to several arguments of appellee's counsel, and there is another

point that the cumulative effect of all the arguments constitutes reversible error. The entire arguments of appellee's counsel are in the record. These assignments are sustained; but we do not extend this opinion to set out the arguments complained of, since these matters are not likely to arise on another trial.

The judgment is reversed and the cause remanded.