**AMBROSE & COMPANY, Inc., et al.,**
Appellants,

v.

Delbert E. BOOTH et al., Appellees.

No. 15800.

Court of Civil Appeals of Texas.

Fort Worth.

March 29, 1957.

Rehearing Denied April 26, 1957.

Garrett & Garrett and Rufus Garrett, Jr., Fort Worth, for appellants.

M. Hendricks Brown, Fort Worth, Touchstone, Bernays & Johnston, W. Richard Bernays, Dallas, for appellees.

MASSEY, Chief Justice.

From a take nothing judgment in a suit for damages because of the negligent burning of a building and furniture and personal effects therein contained, the plaintiffs appeal.

Judgment affirmed.

Appellants here, plaintiffs in the trial court, are Ambrose & Company, Inc., the owner of the building which was destroyed by fire, Eagles Club of Eagle Mountain Lake, a corporation, which was the lessee of said destroyed premises, and certain individuals who are unnecessary to designate by name but who were tenants in the building or owned property therein at time of the fire. Appellees here, defendants in the trial court, were Delbert E. Booth and his son, William Duncan (Bill) Booth, individuals. The latter was a young man, having been 17 years of age at time of the fire.

Both appellees were water skiing enthusiasts and members of an association which was maintaining a water ski jump in the lake near appellants' premises. On May 25, 1955, they were engaged in waxing the ski jump, which had been drawn up on the beach for the purpose. There were other persons who were participating in this operation, but none of them were defendants in the suit. It appears that preparation of the wax for application to the ski jump involves the heating of paraffin, with an admixture of gasoline after its heating. Appellee Bill Booth, with the help of a friend, was using one of the third-floor apartments of the building in the preparation of the wax. The tenant, whose apartment it was, had volunteered the use of same for the purpose on the previous day and wax had been prepared at that time. The tenant was not present on the occasion in question, however, but his kitchen was being used at his implied invitation.

Young Booth and his friend had made one "batch" of wax for the ski jump and were in the process of making a second when the fire occurred. As before, they heated the paraffin on the kitchen stove (a butane gas stove with pilot light), moved the melted paraffin to a kitchen table nearby, and proceeded to pour about a cup of gasoline into the hot paraffin. On this occasion, however, instantaneous fire occurred upon the pouring of the gasoline into the paraffin. As result thereof the entire building and its contents were destroyed.

At the time of this occurrence, Delbert Booth was at the point the ski jump was drawn up onto the beach. He testified that he did not know that his son had gasoline inside the building. He did know, and it

was with his approval, that the paraffin was being heated in the apartment in question. Apparently he labored under the impression that after the paraffin was heated young Bill was carrying it outside the building and mixing the gasoline with it at a point outside. He had not cautioned or instructed his son not to take gasoline inside the building.

By the jury's verdict, findings were returned, in which, by answers "No", the jury refused to find that the pouring of gasoline into the heated paraffin was negligence, that the heating of the paraffin inside the building was negligence, or that the handling and using the gasoline inside the premises near the stove was negligence. By like answers, the jury refused to find that Delbert Booth's failure to warn his son of dangers known to him incident to the mixing of hot paraffin or his failing to ascertain where the latter was carrying on the mixing operation constituted negligence. Finally, the jury found that the fire in question was the result of an unavoidable accident.

By their first six points of error appellants contend that both appellees were guilty of negligence as a matter of law, that the jury findings were contrary to all the evidence and inconsistent with the admissions of appellees, and that the trial court erred in refusing the plaintiffs' motion to disregard the answers returned and to render judgment in their behalf. By prayer for relief appellants request that we reverse the judgment of the trial court and render a contrary judgment in their behalf.

■ There is a rebuttable presumption that a 16 year old person may be presumed prima facie to have the capacity and discretion of an adult. 30-B Tex.Jur., p. 316, et seq., "Negligence", sec. 101, "Age"; Dallas Ry. & Terminal Co. v. Rogers, 1949, 147 Tex. 617, 218 S.W.2d 456. There is no evidence in the record rebutting that presumption as to the appellee, young Bill Booth. We feel quite certain that in this state of the record

Delbert Booth must be treated as having had the right to assume that his 17 year old son's capacity and discretion was that of an adult. Certainly we must hold that the jury was entitled to acquit Delbert Booth of negligence, it not having been shown that he was on actual notice of his son's activities. The circumstances of the case are not such as would permit a conviction of the father upon negligence, absent a like conviction of the son.

■ We next consider the question of whether young Bill Booth was negligent as a matter of law or if that matter was determinable by the jury. This court has recently considered such question in the case of Fort Worth & D. Ry. Co. v. Barlow, 1953, Tex.Civ.App., Fort Worth, 263 S.W.2d 278, writ ref., n.r.e. Ordinarily negligence is a question of fact, though there are instances wherein it may be resolved as a question of law. The basis of all the cases holding a party negligent as a matter of law appears to be predicated upon a state of facts showing that the guilty parties exerted no care to prevent injury or damage and made no effort to avoid the happening resulting in such. See the cases collected and cited in the case of Fort Worth & D. Ry. Co. v. Barlow, supra.

■ In the present instance, we have examined the statement of facts and are satisfied that the evidence showed that there was explanation, comportable with reason, as to why Bill Booth did not know and appreciate the peril and foresee and prevent the occurrence which gave rise to this litigation. In view thereof, the question of negligence in the case was one of fact for the jury.

Furthermore, we hold that the jury's findings in acquittal of any negligence conform to and are supported by the evidence. It must be remembered that appellants bore the burden on the issues submitting the questions determinative of the question and that before making answers favorable to appellants the jury was required to find

by a preponderance of the evidence that negligence existed as inquired about.

By three points of error the appellants complain because the trial court refused to sustain exceptions taken to certain pleadings of appellees, and in admitting evidence purportedly supported thereby. Appellees obviously attempted to inject the defense of contributory negligence into the case, to show that the operation and maintenance of the ski jump was pursuant to a joint enterprise on the part of appellants as well as appellees, and/or that appellants were chargeable with appellees' negligence, if any, on the theory of agency. In such attempts appellees were unsuccessful and the trial court denied them any defensive special issues. The appellants theorize that because appellees' testimony under such pleadings was to no legal effect, its only office was to create prejudice and to becloud the true issues, and therefore operated to cause the return of an improper verdict and the rendition of an improper judgment.

We must disagree with appellants and overrule the points of error. Though under analogous circumstances there perhaps might be special issues the answers to which might be erroneously affected adversely to a losing party, there was no such special issue in this case which could have been so affected. The testimony introduced did not bear upon the matter of whether either appellee was or was not guilty of negligence, but contrarily upon the questions of contributory negligence, agency, and joint enterprise. Appellants have not demonstrated where the questionable testimony bore upon and influenced the jury to return findings which acquitted appellees of negligence contrary to the findings it probably would have returned to such issues but for the admission of the testimony. These are the findings, effects of which appellants must overcome. Texas Rules of Civil Procedure 434 and 503; Ligon v. Green, 1947, Tex.Civ.App., Fort Worth, 206 S.W.2d 629, writ ref., n.r.e.

At the beginning of the trial appellants filed a motion *in limine* in an abundance of caution to prevent the injection into evidence the fact that fire insurance was carried upon the destroyed building, and that a verdict and judgment for them would inure to the benefit of the companies which had paid them on account thereof. The trial court acted as suggested and instructed all parties not to inject insurance into the evidence before the jury.

The appellants who carried the insurance had received payment, whereupon it, or a portion thereof, was applied to the mortgage on the building. During the course of the trial the appellees took the position that they were entitled to ask questions which would reveal the information inhibited under the court's instruction on the theory that matters thereby to be proven were independently relevant. The trial court disagreed and adhered to its original instructions. After all other evidence was in the record the appellees called one of the appellants, Mr. Warren Ambrose, and asked him the following question, "Mr. Ambrose, it is a fact, isn't it, that a short while after this fire occurred that you made a substantial payment on that mortgage to the Trans-American Life Insurance Company?" The witness answered, "Yes, sir." Immediately the attorney for the appellants acted. The jury was retired and he moved for a mistrial. The trial court strongly censured the attorney who had asked the question, indicating the belief that it could have had no purpose other than to indicate to the jury that insurance was in the case. However, the trial court overruled appellants' motion and called in the jury and informed it that he had sustained an objection to the question and answer. He instructed the jury that neither the question nor the answer could be considered for any purpose in the deliberations. Both sides rested without any further action.

In their motion for new trial, following judgment, appellants advanced the foregoing as error, asserting that the question

and answer thereby elicited was reasonably calculated to harm and did harm their cause. No affidavit was attached to the motion. Thereafter, upon the hearing of the motion for new trial, appellants brought one of the jurors, Mr. Paul West, and offered his testimony. Appellees objected, asserting that in the absence of affidavits evidence from jurors could not be introduced at the hearing upon the motion for new trial. Appellants' attorney informed the court that he was not alleging nor attempting to prove any jury misconduct, but that he was going to attempt to prove that prejudicial error occurred as the result of the question and answer in question. Part of the witness' testimony was admitted.

Appellants' theory was that an overt act—on the part of appellees' attorney, not of the jury—stood proven, and that if the witness' answers to questions involved his mental processes as a juror, questions eliciting the same would be proper. Appellants nevertheless insisted that mental processes were not involved. The material questions and answers were excluded upon a ruling of the court, whereupon appellants' attorney got the same matter into the record on the theory that he was proving up a bill of exceptions. Essentially, the testimony was to the effect that to juror West the question asked and answer elicited from Mr. Ambrose meant that Ambrose & Company, Inc., probably had fire insurance on the property destroyed, the payment of which enabled it to make the substantial mortgage payment. Counsel did not further develop Mr. West's testimony upon this matter, and was apparently content to show merely the understanding and state of mind of this one witness following the occurrence.

■ We are mindful of the effect the new Texas Rules of Civil Procedure have had upon the losing party's ability to obtain a reversal of a judgment because of an error of law committed during the course of trial. Perforce the provisions of Rules 434 and 503 such a party is obliged to demonstrate that the error amounted to such a denial of his rights as was reasonably calculated to cause *and probably did cause* the rendition of an improper judgment, or to have probably prevented his proper presentation of the case to an appellate court. In the testing of the question as to whether the error complained of probably did cause the jury to return an improper verdict we are obliged to consider whether the jury was persuaded by reason of the error to return a verdict contrary to the verdict it would have returned had the error not occurred. Goforth v. Alvey, 1954, 153 Tex. 449, 271 S.W.2d 404.

■ We are inclined to the opinion that the question asked by appellees' counsel and the answer elicited from the witness was reasonably calculated to cause the jury to return a verdict in favor of appellees rather than appellants, hence devote our attention to the question of whether appellants have discharged the burden of demonstrating that the question and answer probably caused the jury to return a verdict other than that which it would have otherwise returned.

At the outset we must recognize that the individuals going to make up a jury are of varied experience and from different fields of endeavor. For example, a juror experienced in the financing of real property would know that it would be a rare situation indeed where a lending agency would be willing to carry a mortgage upon realty as security for its loan without insisting that the property be insured. If such a juror was further familiar with the provisions of such an insurance policy he would know that the insuring company would be subrogated to the mortgagee's rights to collect damages from any person responsible for any fire damaging the property, upon payment of the loss. A substantial payment in reduction of the mortgage shortly after the property was destroyed by a fire would reasonably indicate to the juror that the payment was made

from insurance money collected. The same circumstances might mean nothing to another juror who had never financed the purchase of any real property or had never had occasion to learn that it was the insurance company and not the property owner who was entitled to claim common-law damages of the party responsible for a fire and for damages resulting therefrom, upon making the contractual payment provided for in an applicable policy of fire insurance.

The limit of appellants' proof, pointed to the matter of demonstrating that the question and answer probably caused the jury to return a verdict other than that which it would have returned except therefor, was that to juror West it meant that there was fire insurance on the property destroyed and that the insurance company paid off under its policy (whereby it became subrogated) and that the money so paid was applied upon the mortgage. There was no proof that Mr. West ever communicated his conclusion to anyone else on the jury, or that the matter was ever discussed by the jury. Since the court instructed the jury not to consider the question and answer we should assume that the jurors complied with such instruction, no evidence appearing to the contrary. Even if Mr. West had stated his personal conclusions to the jury we could not say that the jury was improperly influenced if there was no discussion and no action taken in light thereof. Sproles Motor Freight Lines v. Long, 1943, 140 Tex. 494, 168 S. W.2d 642. No action resulted from Mr. West's peculiar or special knowledge of or experiences about business practices like unto that which occurred in the case of Motley v. Mielsch, 1947, 145 Tex. 557, 200 S.W.2d 622.

Clearly, unless the jury *en masse* was caused to deliberate with the understanding that appellants were covered by fire insurance and that they were either attempting to effect a double recovery, or that the insurance company was an actual party at interest, etc., and considered such fact,—and further were influenced thereby to return a verdict other than they would have returned except for such influence upon them,—appellants have fallen short of any discharge of the burden imposed upon them by T. R. C. P. 434 and 503. Secret but unstated thoughts, and mental operations of jurors, not being overt acts, are not misconduct. Akers v. Epperson, 1943, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028 (answering certified questions); Bradley v. Texas & P. Ry. Co., 1928, Tex. Com.App., 1 S.W.2d 861; Texas & P. Ry. Co. v. Aaron, 1929, Tex.Civ.App., Texarkana, 19 S.W.2d 930; Texas Employers' Ins. Ass'n v. Eubanks, 1927, Tex.Civ.App., Amarillo, 294 S.W. 905, error refused; Twichell v. Klinke, 1925, Tex.Civ.App., Amarillo, 272 S.W. 283, 289, writ dismissed. Under the circumstances of this particular case, unless misconduct be shown to have followed the error complained of by appellants, the burden of showing probable harm has not been discharged.

The judgment is affirmed.