Ernest REUTER, Jr., d/b/a Reuter's Building Material and Supply, and Caesar Parker, Appellants,

v.

Charles R. GILBREATH, Appellee.

No. 6674.

Court of Civil Appeals of Texas.

Beaumont.

March 10, 1966.

Rehearing Denied April 6, 1966.

———◆———

John H. Benckenstein, Beaumont, for appellants.

Richard McDaniel, Winnie, for appellee.

HIGHTOWER, Chief Justice.

This lawsuit, brought to recover personal injury and property damages, arose out of a collision in Woodville, Texas, between an automobile driven by appellee and a cement mixer truck being driven by one of the appellants, Caesar Parker. Both vehicles were proceeding in the same northwesterly direction on State Highway 287. Parker was an employee of the other appellant, and was acting within the course and scope of his employment at the time of the collision. Trial was to a jury and resulted in a judgment for appellee in the amount of $5,550.00. The parties will be referred to as they were in the trial court or by name.

Defendants first brief and argue their points of error 2 through 5 together. They refer to the answer of the jury to Special Issue No. 25 which was predicated upon an affirmative answer to Special Issue No. 24, which inquired of the jury as to whether the plaintiff drove his automobile to the left side of the roadway in an attempt to pass the truck when he was approaching within 100 feet of the intersection of Highway 287 and Myrtle Street. The jury's answer to said issue was "We do". Special Issue No. 25 was the causation issue, to which the jury answered "We do not".

In its first series of points defendants contend (2) the court erred in refusing their motion to disregard the answer to Special Issue No. 25, (3) in refusing its motion for new trial because of no evidence, (4) insufficient evidence, and (5) the finding was against the great weight and preponderance of the evidence so as to be manifestly unjust.

Several of defendants' other points also complain of the court's error in overruling their motion to disregard several other findings of the jury, and by their first point, which they have briefed last, they complain of the court's error in refusing their motion non obstante veredicto. We shall treat certain aspects of these latter contentions in the latter part of the opinion after first treating contentions relating to the evidence to support all jury findings complained of.

■ We summarily overrule defendants' points of no evidence and insufficient evidence to support the answer to Issue No. 25 because, by first determining the contention of whether the answer of the jury is against the great weight and preponderance of the evidence so as to be manifestly wrong, we must consider all the evidence, favorable and unfavorable to the answer of the jury, and after such consideration, we feel it is self-evident that said points are without merit.

The evidence favorable to defendants is:

The collision occurred at the intersection of Myrtle Street and U. S. Highway 287

within the city limits of Woodville, Tyler County, Texas, at about 1:00 p. m. At that point Highway 287 runs approximately southeast and northwest, and Myrtle Street runs approximately north and south. Highway 287 at said intersection is paved with a center stripe, 20 feet wide, with shoulders on each side wide enough for a car to get on; Myrtle Street intersects said highway, approximately at right angles and it is about the bottom of the hill and level at the intersection. There is a street sign there that says "Myrtle Street" about 15 feet from the edge of the intersection; the sign is about 15 feet west of Myrtle Street and about 42 feet from the hard surfaced highway. The sign is 6 inches wide and 20 inches long. There are no branches or anything else to keep one going west from seeing the sign "Myrtle Street". There are homes along that area. It had been raining before the accident; the streets were wet, and slippery. The defendant Parker was driving a cement mixer truck, more fully described hereinafter, taking concrete from the plant near the depot in Woodville, Texas, to a house foundation on Myrtle Street. The cement mixer truck was green and the drum was orange. The truck was equipped with mechanical turn signals to indicate the direction the truck would turn—blinker lights on each side, located in front and in back on each side; on the front they were mounted on the tops of the fenders; on the rear of the truck the signal lights were between the dual wheels. Just prior to the collision Parker was driving approximately 20 m. p. h., on his right, the north lane. Parker saw the plaintiff's car before the collision at the top of the hill southeast of Myrtle Street, towards Woodville, about 300 feet away—in his rear view mirror. He was approximately 300 feet from Myrtle Street when he put his signal lights on, indicating a left turn. The light buttons on the inside showed that the signal lights were burning, blinking, and he could see the signal light on the left front fender burning and blinking. He continued to watch plaintiff's car behind him; it made no move to

pass; and when Parker was about 20 feet from the intersection, he looked ahead and seeing no traffic, he began to make his left turn from the highway into Myrtle Street when the collision occurred—about 5 or 6 feet from the intersection. At the time of the collision defendants' truck was in the right lane, ready to make the left turn, when it was hit, appellee's car knocked him right into the intersection. At that time he was going 4 to 5 m. p. h. Plaintiff did not see any red lights on the back of defendants' truck, indicating that the truck was applying its brakes. The impact of plaintiff's car with defendants' truck was with such great force that the front end of the truck reared up—and kind of jumped.

Plaintiff was driving a 1959 Oldsmobile on a Friday, en route to Fort Worth, Texas, from Fort Polk, Louisiana, on a three-day pass. He did not stop for lunch; he picked up some cakes from a service station. He was traveling by himself. He was coming from the northeast and was driving in a northwesterly direction, on a sort of straight-away, straight on each side of the intersection where the collision occurred, for about a quarter of a mile, on a smooth black topped highway. The truck was in the highway ahead of him, going in the same direction—northwesterly, and he saw it about 300 yards ahead of him. At that time he and the truck were in the right hand lane. He didn't know how fast he was driving. The truck was going slower than he and he was overtaking the truck. He had just come over the hill; he guessed that he was on top of the hill; and as he started down the hill, he saw the truck down the hill. He was not meeting any traffic; his left lane was clear, and the only thing that he could see in his right lane was the truck. There was nothing about the weather that interfered with his view. He speeded his car up to go around the truck. He guessed he was going about 45 m. p. h. when he stepped on the gas to pass the truck. He couldn't say for sure that before the collision the truck had crossed the centerline or any

part of it. When plaintiff did apply his brakes, he slid. The road was like glass, and he applied his brakes when he was about two car lengths away, and his car didn't slow down. Immediately after the accident the signal lights on the left front fender of the truck were still burning, still blinking; the signal lights on the rear of the truck were knocked off; the mud flaps and the license plates on the rear of the truck were knocked off; and the frame of the truck was knocked out of alignment. There were no marks on the side of the truck; it was not hit broadside; the only marks on the truck were on the rear of it. The Chief of Police investigating the collision found, when he arrived at the scene, defendants' truck sitting in the middle of Myrtle Street and the plaintiff's car in the ditch. He found dirt on each side of the centerline of the highway and skid marks on each side of the centerline. Most of the skid marks were in the left lane. There were some in the right lane which started there but none at the point of impact. All of the skid marks were within 100 feet of said intersection. Inside of plaintiff's car was a package of cinnamon rolls or some kind of sweet rolls, a pint size of pasteboard carton of milk that had been opened and some of it spilled in the car; there was a coke bottle on the floorboard with some coke in it, and food was sprayed across the windshield.

The evidence favorable to the answer of the jury to Issue No. 25 is: The two vehicles involved in the collision were both proceeding in a northwesterly direction on Highway 287 a few seconds before the collision. Myrtle Street runs approximately north and south, and it intersects Highway 287 on the southwestern edge of said highway. Myrtle Street does not traverse the highway. A vehicle traveling in a northwesterly direction on said highway that turned into Myrtle Street would have had to make a very sharp turn, the angle being approximately 135 degrees. The truck which defendant Parker was driving was a cement mixer truck. It had 10 wheels, was approximately 24 feet long and was 7 feet 10½ inches wide. The truck itself weighed about 18,000 pounds empty, and the wet cement it carried weighed about 4,500 pounds per cubic yard. Mr. Reuter said the truck probably had 4 or 5 yards of cement on it. He also testified that it had to be driven at an extremely slow rate of speed to make a sharp turn because it was top-heavy. The plaintiff was a soldier who was stationed at Fort Polk, Louisiana. He was not familiar with the highways and streets in Woodville, and did not know that Myrtle Street intersected Highway 287 at said point. The sign "Myrtle Street", of the dimensions hereinabove stated, is located 42 feet from the southwestern side of the hard surface of Highway 287 and 15 feet west of said Myrtle Street. The sign is under a large liveoak tree, the limbs of which, heavy with foliage, hung down behind the sign. The Plaintiff's attention was on the highway and truck ahead of him. The truck appeared to him to be stopping in the right hand lane of traffic and nearer to the right hand edge of the highway than it was to the centerline. It gave no signal that it was about to make a left turn. Plaintiff attempted to avoid striking the truck by attempting to go around the truck on its left, since there was no traffic approaching from the other direction, and since there had been no signal from the truck driver that he intended to turn left. Plaintiff laid down about 60 feet of skid marks with his car immediately before the collision, and at the time the skidding started all four wheels of the plaintiff's car were in the right hand lane of the highway in the direction in which he was going. There were approximately 25 feet of the skid marks in the right hand lane and then approximately 35 feet of skid marks in the left hand lane. There is a clear inference that the plaintiff might have been in the left hand lane prior to the time the brakes took effect, but at the time the brakes took effect he was definitely in the right hand lane in the direction in which he

was traveling. The car was sliding on the right hand pavement at the time he crossed into the left hand lane. The truck's rear wheels left smear marks at the point of impact and these smear marks indicated that the right rear wheels of the truck were in the right hand lane and the left rear wheels were in the left lane at the time of the impact. There were no street or highway signs or markers to indicate a "no passing" zone. The plaintiff had just passed a highway marker which indicated a speed limit of 50 m. p. h. for this zone. The defendant Parker gave no signal of his intention to turn left but appeared to plaintiff to be merely stopping in the right hand portion of the right hand lane. From the testimony of Parker, it is apparent that he practically stopped, and the testimony of Mr. Reuter indicates that he would have had to almost stop in order to make the sharp turn to the left at an angle of 135 degrees.

In most cases our courts have always held that the question of proximate cause is a fact question for the jury's determination. Proximate cause means not only cause in fact, but the element of foreseeability is equally important. Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560.

Plaintiff was a stranger unacquainted with the layout of the streets in the City of Woodville. The jury could, and inferentially did, conclude that the small Myrtle Street sign was difficult to see and would not have been observed by an ordinarily prudent person under the circumstances in this case; that a prudent person would have been watching the highway and the truck, as the plaintiff was doing. The absence of a "no passing" zone, the position of defendants' truck and the testimony that there was no left rear signal light burning on the truck was evidence which would reasonably tend to strongly influence the minds of a jury. They could reasonably have concluded that

it appeared to plaintiff that Parker had stopped his truck with no intention of making a left turn and that there was nothing that would have caused a reasonably prudent person to have thought that by going to the left of the truck a collision would occur; that attempting to turn left appeared to plaintiff to be the best way to prevent a collision and that at such time it appeared to him that a collision would occur if he didn't go to the left. Then again, we have the physical evidence that the skid marks showed that plaintiff's car had skidded into the left lane. As in most cases, the evidence was conflicting and it was the jury's prerogative and duty to determine such conflict, they being the judges of the facts and of the credibility of the witnesses. Defendants' points 2 through 5 are overruled.

Relative to defendants' points of error 6 through 9, the jury found in answer to Special Issue 12 that plaintiff "immediately before the collision in question failed to give an audible warning with his horn of his intention to pass defendants' truck". They also found that such failure was not negligence. The causation issue predicated on affirmative finding to the negligence issue was not answered. Defendants' points 6 through 9 are in substance: (6) that the court erred in not disregarding the jury answer to Special Issue 13; (7) that plaintiff's failure to sound his horn was negligence per se; (8) the evidence was insufficient to support said answer; and (9) the same was against the great weight and preponderance of the evidence.

Again, we relegate a determination of defendants' contentions relating only to pure questions of law to the latter part of the opinion and presently deal only with the contentions relating to the sufficiency of the evidence.

As we did in treating defendants' points of error relating to Special Issue No. 25, we summarily overrule their points of no evi-

dence and insufficient evidence to support the jury's answer to Special Issue 13 for the same reason we did in treating such contentions relative to Special Issue 25. We first set forth the evidence favorable to defendants, omitting that which has been hereinabove referred to:

Plaintiff admitted that before making an attempt to pass the truck he did not sound his horn nor give an audible warning of his intention to pass defendants' truck proceeding in the same direction in his right lane.

Again, omitting evidence which has been hereinabove referred to, we allude to the evidence most favorable to the jury's answer to Special Issue 13:

The defendant Parker testified that, contrary to statute, he moved the truck to the right hand edge of the right hand lane in preparation for making his turn to the left. The statute recognizes that a left turn be made from near the centerline; Vernon's Ann.Civ.St. Art. 6701d, § 65(b) and § 68. Plaintiff was in his own lane of traffic when he applied his brakes and then slid into the left lane. Under all the evidence and reasoning hereinbefore set out, the jury could reasonably have concluded that it appeared to the plaintiff at first that the truck was pulling over to the right hand side of the highway to a stopped position but that when plaintiff suddenly concluded that it was about to make a left turn across the highway and block both lanes of traffic, he used his foot to brake the car and used both hands in trying to steer the car in order to avoid a collision; he was able to keep his car on the highway, but in doing so he had to use both hands on the wheel and had no way of blowing the horn and that there was no time for cool, calm deliberation.

In answering the negligence issue the jury was authorized to determine whether or not the plaintiff's actions met the standards of the ordinarily prudent man under the circumstances. We conclude that in answering Special Issue 13 the jury did not abuse its discretion or prerogative and that said answer is not against the great weight and preponderance of the evidence. Accordingly, all the defendants' points relating to the evidence are overruled. Ft. Worth & D. Ry. Co. v. Barlow, Tex.Civ.App., 263 S.W.2d 278.

In answer to Special Issue 17 the jury found plaintiff did not fail to keep a proper lookout as that term was defined in the charge. The causation issue (18) was not answered. By points of error 10 through 12 the defendants contend: no, insufficient, and against the great weight and preponderance of the evidence.

Again, we refer to all the evidence hereinabove set forth and conclude that the same presented a fact issue on proper lookout and that the jury's answer to Issue 17 was supported by and was not against the great weight and preponderance of the evidence.

In answer to Special Issue 19 the jury found that plaintiff did not fail to have his automobile under proper control. The usual instruction on proper control was contained in the charge. The causation issue (20) was conditioned on an affirmative answer to Special Issue 19 and was unanswered. By points of error 13 through 15 defendants contend there was no evidence to support said answer; the evidence was insufficient; and against the great weight and preponderance of the evidence.

We again refer to all the evidence favorable to defendants hereinbefore set out. Additionally, there is evidence in the record that plaintiff saw defendants' truck about 300 yards ahead of him as he came over a hill; the truck was slowing down and he was overtaking it; he was about two car-lengths from the truck when he applied his brakes. Plaintiff testified that at the time of the impact the truck was in the right lane, and that after he started around the

truck he put his brakes on and at that time he was in the left lane and his tires started skidding right then. He struck the left rear corner of defendants' truck.

We have heretofore set out the testimony with reference to the skid marks of plaintiff's car at the scene which were testified to by the Chief of Police of Woodville. The jury was entitled to believe that the skid marks more accurately portrayed what actually happened than was portrayed by the testimony of the plaintiff from memory at the time of trial. Considering all the evidence, both favorable and unfavorable to defendants, we hold the jury's answer to Special Issue 19 was not against the great weight and preponderance of the evidence. Accordingly, defendants' other points regarding the evidence are overruled.

Also, we have observed that in addition to the general issue on proper control, the trial court, at the request of defendants, submitted various shades of the same issue separately and in answer to each of them the jury failed to find: that plaintiff was operating his car at an excessive speed; that plaintiff was following the truck too closely; that plaintiff's failure to turn his car to the right immediately before the collision was negligence; the failure of plaintiff to stop his car was negligence. Defendants have not complained on appeal with reference to any of these answers by the jury and we accept them as correct. Taken together, they fairly presented to the jury the issue of proper control under the circumstances, thus depriving defendants of any advantage in complaining of the jury's answer to the general issue on proper control.

■ In answer to Special Issue 1 the jury found that the driver of the truck, Parker, failed to keep a proper lookout and that (2) such failure was a proximate cause, etc. By points of error 16 through 18 defendants contend that the court erred in overruling their motion to disregard said answer; that there was no evidence to support the same, and that the same is contrary to the great weight and preponderance of the evidence.

Presently treating the evidence points only, we look for additional evidence favorable to defendants' contentions. Parker was operating his truck at approximately 20 m. p. h. in his right lane of traffic. He first saw plaintiff's car before the accident at the top of the hill behind him. He observed through his rear view mirror that plaintiff was driving in the same direction and in his right lane of traffic. He continued to watch plaintiff's car which made no move at that time to pass the truck. When Parker was within 20 feet of the intersection of said highway and Myrtle Street, he looked ahead and, seeing no traffic coming toward him, he was getting ready to make a turn to the left when plaintiff ran into his left rear end.

With reference to the evidence unfavorable to defendants' contentions, we refer to all the foregoing evidence which we have heretofore held presented fact questions for the jury, i. e., it appeared to plaintiff defendant Parker was traveling at a very low rate of speed preparatory to making his left hand turn; it appeared to plaintiff he was coming to a stop nearer to the right hand edge of the highway than it was to the centerline; it gave no signal that it was about to make a left turn, and other evidence favorable to the jury's answer to be found under our summarization of the same discussing the jury's answer to Special Issue 25 hereinbefore. The evidence presented a fact issue for the jury's determination and defendants' points of error relating to the evidence are overruled, it being our opinion that the jury's answer to Special Issue 1 was not against the great weight and preponderance of the evidence so as to be manifestly unjust.

■ In answer to Special Issue 3 the jury found that Parker turned the truck across the centerline of the highway when such movement could not be made with safety. No negligence issue was submitted. The causation issue (4), predicated on an

affirmative answer to Special Issue 3, was answered affirmatively. By points of error 19 through 21 defendants complain that the court erred in refusing their motion to disregard the answer to Special Issue 3; that the evidence was conclusive that turning the truck across the centerline (if he did so) could be made safely and that said answer was against the great weight and preponderance of the evidence. In their briefs, defendants only argue that Parker started to make his left turn when such move could be made with safety.

We think that all the foregoing evidence and reasoning, particularly that relating to defendants' contentions that Parker did not fail to keep a proper lookout, sufficiently disposes of defendants' evidence points and they are overruled in the opinion that the answer to Special Issue 3 is not against the great weight and preponderance of the evidence.

■■■ In answer to Special Issue 5 the jury found that Parker failed to signal his intention to turn left; that such failure was negligence; such failure was negligence and a proximate cause of the collision. Defendants contend that the court erred in overruling their motion to disregard the jury's answer to Special Issue 5; that there was no evidence to support said answer; that if there was, the same was insufficient and against the great weight and preponderance of the evidence.

We believe that we have sufficiently set out the conflicting evidence in the record upon which the jury could have found favorably or unfavorably on the liability issues relating to the defendants. They simply used their prerogative to give full credibility to the evidence unfavorable to the defendants. We hold that the jury's answer to Special Issue 5 was not contrary to the great weight and preponderance of the evidence and all of the defendants' points relating to the evidence are overruled.

In the fourth paragraph of this opinion we have previously stated that after a de-termination of defendants' points of error relating to the evidence, we would determine certain other facets of defendants' points later, which we now proceed to do. These facets consist of errors complained of in defendants' motion to disregard certain of the jury's answers; their motion non obstante veredicto; and their motion for new trial. They relate to contentions in plaintiff's original brief that he had proved that he was reasonably excused of the statutory violations which the jury had found he had committed, an example being the jury's answer to Special Issue 25, which answer was that plaintiff drove his automobile to the left side of the roadway in an attempt to pass the truck when he was approaching within 100 feet of the intersection of Highway 287 and Myrtle Street. This is clearly in violation of Art. 6701d, § 57(a) 2. It has been noted that the jury also found plaintiff guilty of several other statutory violations but failed to find negligence or causation involved. In disposing of the arguments relating to these various statutory violations, we will confine our discussion solely to the answer of the jury to Special Issue 25.

In reply to plaintiff's contention that he had proved he was reasonably excused of such violation, we quote from defendants' second supplemental brief regarding same:

"Under Appellee's Counter Points 2 through 7 inclusive, page 12 of his brief, he argues that 'His being on the left side of the road was reasonably excused. This would apply even if a penal statute had been violated.' On said page 12 and elsewhere the Appellee argues that the trial court did not submit, nor was he requested to submit an issue to have determined if the plaintiff's being on the left side of the road was negligence and that under the evidence of the case such a finding was necessary to establish defendants' purported defense, and there being no such finding and no request for such an issue to be determined, it is to be presumed that the trial court found for the plaintiff on the matter. Further that an

act under statute would ordinarily be negligence per se may not be even ordinary negligence at common law under the particular circumstances of a particular case. In answer to such argument made by Appellee, Appellants call the Court's attention to the following: (1) Appellants specifically plead the various acts of contributory negligence on the part of Appellee; (2) Appellee did not plead excuse; (3) Appellee's pleadings gave no notice that he was relying upon excuse as a justification for the claimed violation; and (4) Appellee did not request the submission of a special issue on excuse or a special issue on common law negligence in respect to the claimed acts of statutory violations."

Defendants then refer to the decision of Rash v. Ross, Tex.Civ.App., 371 S.W.2d 109, ref. n. r. e., and argue that such decision is authority that plaintiff must have pleaded and requested the submission of a special issue on excuse or on common law negligence in respect to the acts of statutory violations.

■ First we observe that in the case at bar that the plaintiff had pleaded that the wreck was proximately caused by various acts and omissions of negligence of the truck driver, some of which were turning the truck in front of plaintiff's car without adequate warning; turning the truck from a straight line when such movement could not be made with safety; and failing to signal his intention to turn. There were no exceptions before us which were leveled at these pleadings and there are no exceptions before us which were leveled at the submission of the various liability issues against defendants. Therefore, the issues of justifiable excuse are deemed to have been tried by consent. Of these, there are many other than the ones of which defendants have complained. Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979, at page 984, in the third paragraph of Chief Justice Alexander's concurring opinion.

■ Moreover, we feel that plaintiff's pleadings gave adequate notice of justifiable excuse under the circumstances. In the very recent opinion of the Supreme Court by Justice Pope of W. J. Hammer, Jr., v. Dallas Transit Company, Texas Supreme Court Journal, Vol. 9 No. 12, Jan. 8, 1966, several earlier opinions dealing with the present subject are analyzed and distinguished. It is there made clear that an offender who relies upon justifiable excuse of a statutory violation must show that the violation was not the result of his own negligence. It appears that plaintiff herein has done this (see the résumé of evidence favorable to plaintiff in our treatment of defendants' points of error 2–5, supra) and that sufficient special issues which, as we have said, were tried without objection, are supported by such proof. It is said in the Hammer Case, supra:

"It is not every statutory violation that will carry with it the additional element of negligence. * * * If it is such a statute, however, an offender may go forward with the evidence and show excuse or justification for the violation. * * * When he does so, he thrusts upon the other party the burden to obtain a finding that the violation was negligence under the common-law standard."

■ Thus, plaintiff went forward with the evidence and showed excuse for his intended attempt to pass defendants' truck in violation of Art. 6701d, Sec. 57(a) 2, supra. When he raised the question he thrust the burden upon defendant to submit, and obtain a finding on common law negligence as a component, or subsidiary part, of Special Issues 24 and 25. Having failed to so do, they cannot complain of the presumed finding by the court in favor of plaintiff on said omitted issue. Travelers Ins. Co. v. Booker, Tex.Civ.App., 368 S.W.2d 54.

In answer to the damage issue (No. 32) the jury awarded plaintiff the sum of $5,000.00. The trial court in this issue, in substance, instructed the jury that in answering said issue they were to take into

consideration the following elements of damage, if any.

(a) Such sum or sums of money, if any, as plaintiff has lost as a result of lost time from his work, if any, as a direct result of his injuries, if any, directly and proximately caused by the collision in question, from the date of said injuries down to the date of said trial.

(b) The present cash value of such money as plaintiff will in all reasonable probability lose in the future beyond the date of trial because of diminished earning capacity to work and earn money in the future, etc.

(c) Physical pain and mental suffering from the date of the collision to the date of the trial as a direct result of his injuries, etc.

(d) The present cash value of such physical pain and mental suffering which in all reasonable probability he will suffer in the future beyond the date of trial, etc.

■■ Under points of error 26–30 defendants contend there is no evidence and insufficient evidence that the plaintiff suffered any damages within the purview of the foregoing instructions; that if he did, the finding of the jury is excessive and against the great weight and preponderance of the evidence so as to be manifestly unjust or wrong. (Defendants also contended under their first point that the court erred in overruling their motion non obstante veredicto in connection with the damages awarded by the jury.) We dispose of defendants' contentions by determining whether the answer of the jury was against the great weight and preponderance of the evidence so as to be manifestly unjust by first setting forth the evidence favorable to the defendant:

Dr. Garner, called by plaintiff, was the only medical witness to testify about plaintiff's personal injuries. He had attended plaintiff during his hospitalization period in Woodville, Texas, only. He stated that he couldn't say that plaintiff complained of pain during the time that he was in the hospital; he didn't believe he called for any sedatives; he didn't find any damage to his lungs per se; he had very little trouble with his breathing; he felt plaintiff would recover from his chest injury with no after-effects at all. It was his opinion that when plaintiff was discharged he would recover completely from the accident and would have no permanent disability from it. Sedatives were available for him but he didn't call for any; he didn't appear to be worried about anything; he had shortness of breath for only one day.

Dr. Garner's testimony favorable to plaintiff was:

When he first saw him in the emergency room he was in a state of confusion, had very low pressure and was kind of semiconscious and was really unable to answer questions much of the time; he was bordering on a state of shock; pictures showed he had some injury of his chest, they were a kind of crushing type of injury, apparently he had had a blow across his chest; he had two cracked ribs and probably cartilage between his ribs had been pulled loose to some extent; he more than likely had some bruising or contusion of his lungs; he was kept with his head raised somewhat and his knees flexed to make breathing easier; he was given morphine for pain, if needed; he was given oxygen after he arrived at the hospital about 2:10 p. m. until 6:00 that evening; he was given nutol, which is a sleep medicine, and he was given a capsule containing codeine each day he was in the hospital; he was mentally confused all the time he was in the hospital; his left arm was painful above his left elbow so that he hesitated to move his hand, it hurt him to move his left arm around—he didn't complain about it but he did say it was uncomfortable to try to move it. The type of injury to his chest is generally calculated to cause pain, it is usually uncomfortable. Although he felt plaintiff would recover from his chest injury with no after effects, usually there are other prolonged things; it takes

a little while to get over them but usually they clear up with time. He was still mentally confused at the time he left the hospital in Woodville.

Testimony by plaintiff favorable to his personal injuries:

He had to be propped up in bed to breathe in the Woodville hospital "and there wasn't too much breath either. It was a rough deal, I will tell you for sure. I don't want to go through it again." After he left Woodville, he was sent to Camp Polk hospital where he stayed for some time. He was then sent to Fort Sam Houston hospital. All together, he stayed in hospitals about 5 months. Although there were no broken bones or injury to his arm or hand, he couldn't use or move it for about 3 weeks, after which it gave him no more trouble. He was more nervous after the wreck than he had been before and worried about his condition. He had so much trouble breathing at times that at one time in the hospital he tried to hold his breath to commit suicide.

"Q. Well, why did you do that; tell the jury why you did it.

"A. It was so dadgummed hard to breathe I couldn't get enough air. I don't know, I hope I never have to go through that again."

At Comp Polk a needle was inserted into his side and 3 pans of blood were drained from his side, after which he could breathe better. He lost 3 of his front teeth and 2 others were cracked. The lost teeth were replaced by a partial bridge, which caused him embarrassment because he had to take them out when eating, as they hurt him. Asked if he had pain in the hospital at Woodville, he answered:

"Yea, I guess it's like you would say a caterpillar on your chest, you were trying to breathe and it was crushing you and you couldn't get enough air into you— well, like you normally would."

Since the collision plaintiff testified that, whether in the wreck or not, he has had spots on his lungs, "and that is the reason that I have been in the hospital so long, I guess"; he didn't know whether the wreck had anything to do with that kind of trouble.

Analyzing all the foregoing evidence, we believe it supports the jury award of $5,000.00, and was not against the great weight and preponderance thereof so as to be manifestly wrong. We say this in the belief that the evidence of his pain and mental suffering from the date of collision to the date of trial, standing alone, is sufficient to support the award.

Defendants' other contentions regarding plaintiff's loss of time from work, present or future, future pain and mental suffering; excessiveness of the award and refusal of the trial court to grant judgment non obstante veredicto are all overruled.

Judgment affirmed.

REPLY OF COURT TO APPELLANTS' REQUEST FOR ADDITIONAL FINDINGS OF FACT, RULES 453 and 455.

No. 1—Most of the facts requested by appellants are contained in the original opinion.

No. 2—Appellants' requests Nos. 6 and 9 have been granted by addition at the end of first paragraph, page 3 of this court's opinion.

No. 3—Appellants have requested no other findings of fact relevant or pertinent to the determination of the case.

Therefore, the Court respectfully declines to find additional findings of fact. Appellants' request for additional findings of fact is overruled this 6th day of April, 1966, as is appellants' motion for rehearing.

The action of this court in regard to appellants' motion for findings of fact shall not be construed as a written opinion of this court within the meaning of Rule 458, Texas Rules of Civil Procedure, and no further motion for rehearing by defendants shall be entertained.